UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| STEVEN CARMICHAEL, | | HONORABLE KAREN M. WILLIAMS |
| | Plaintiff, | Civil Action |
| v. | | No. 1:22-cv-5019 (KMW-EAP) |
| CAMDEN COUNTY POLICE DEPARTMENT *et al.*, | | **OPINION** |
| | Defendants. | |

**Dolores Bojazi**
LENTO LAW GROUP P.C.
1814 E R 70
Suite 321
Cherry Hill, NJ 08003

*Counsel for Plaintiff Steven Carmichael*

**William F. Cook**
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont NJ, 08108

*Counsel for Defendants Camden County Police Department, County of Camden, Chief of Police Gabriel Rodriguez, and Officer Jesse Zanichelli*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Steven Carmichael ("Plaintiff") brings this action against Defendants Camden County Police Department ("Defendant CCPD"), County of Camden (Camden County), Chief of Police Gabriel Rodriguez ("Defendant Rodriguez"), and Officer Jesse Zanichelli ("Defendant Zanichelli") under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights.[1] Plaintiff also brings a claim of Battery against Defendant Zanichelli.

---

[1] Plaintiff also brings claims against Camden County, Defendant CCPD, and Defendant Zachinelli under the New Jersey Civil Rights Act (NJCRA). The NJCRA, which is modeled after § 1983, creates a state remedy for civil rights violations. New Jersey courts routinely find that the state analysis under the NJCRA mirrors the federal analysis under § 1983. *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009); *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); *Killion v. Coffey*, 696 Fed. Appx. 76, 77 n1 (3d Cir. 2017); *Estate of Martin v. U.S. Marshals Serv. Agents*, 649 Fed. Appx. 239, 245 n.4 (3d Cir. 2016). As such, the Court will extend its analysis of the federal § 1983 claims to Plaintiff's state law claims under the NJCRA as to all alleged defendants.

Discovery is complete and Defendants now move for summary judgment (ECF No. 82) under Federal Rule of Civil Procedure 56. The Court has considered the parties' written submissions, finds oral argument unnecessary, and decides the motion on the papers. For the reasons set forth below, Plaintiff's motion is **DENIED IN PART AND GRANTED IN PART**.

## II.    BACKGROUND

The events that give rise to this suit occurred at the Camden Waterfront Park ("Waterfront Park") in August 2020. The Waterfront Park is a public park that is subject to a municipal ordinance, which provides that "[n]o person shall be permitted upon the lands and premises of any park or park property located in the City of Camden from the hours of 9:00 p.m. to 7:00 a.m." (SUMF ¶ 14). As such, the Camden County Police Department ("CCPD") assigns officers to clear people out of the Waterfront Park after dusk. (SUMF ¶¶ 15–16). Individuals who remain in the park after hours are subject to issuance of a municipal summons. (*Id*).

Stephen Carmichael ("Plaintiff") was in the Waterfront Park on August 19, 2020, when CCPD officers cleared the park out pursuant to department directives. (ECF No. 82-12 at p. 7).[2] At that time, Plaintiff asked officers, "how is the park closed and I'm looking at other people walking, they're walking their dogs, running and riding their bikes and stuff, how is the park closed when I'm looking at these people in the park." (*Id*). The officer explained that the park was closed from dusk until dawn. (*Id*). Plaintiff told the officer to "tell whoever the chief was or whoever keeps sending him down here to go F themselves, if they all want to keep on coming down here and harassing us." (*Id*).[3] Despite his colorful response, on the night of August 19, 2020, Plaintiff

---

[2] Plaintiff's Deposition at p. 23:11-15
[3] Plaintiff's Deposition at p. 23:24-25, 24:1-2.

complied with the officer's request and left the Waterfront Park without further incident. (*Id* at p. 8).[4]

The very next night, on August 20, 2020, at approximately 11:00 p.m., CCPD Officer Jesse Zanichelli ("Defendant Zanichelli") conducted a check at the Waterfront Park, (SUMF ¶¶ 1, 21), and observed a group of approximately 25 to 30 individuals in the Waterfront Park after dark. (SUMF ¶ 13; ¶¶ 22–23). He then activated the lights and siren on his patrol car and used the public address system (PA system) to announce that the park was closed and that all occupants were required to leave. (SUMF ¶ 13; ¶¶ 22–23).

Plaintiff was in the Waterfront Park when Defendant Zanichelli drove through making the announcement for occupants to depart. (SUMF ¶ 22). Plaintiff heard Defendant Zanichelli's announcements over the PA system but did not immediately leave the park. (SUMF ¶ 22). At that point, Defendant Zanichelli got out of his patrol car to confront Plaintiff directly. (SUMF ¶ 24).

Defendant Zanichelli's body worn camera ("BWC") shows that he approached Plaintiff, who was seated in a camping chair at the edge of the Waterfront Park. (BWC at 3:29). Defendant Zanichelli told Plaintiff that he was being stopped because he did not leave the Waterfront Park after Defendant Zanichelli had made multiple announcements. (BWC at 3:30). Plaintiff told Defendant Zanichelli not to touch him multiple times and then said, "Give me a citation, write it up, write it up, write the citation up." (*Id*). Defendant Zanichelli replied, "Okay, I need your information to write the citation up. What's your name?" (*Id*). Plaintiff responded, "What's the citation?" (*Id*). Defendant Zanichelli said, "You're trespassing, because you won't leave the park." (*Id*). Plaintiff asked, "What, on city property?" (*Id*). Plaintiff then stood up, picked up his chair and said, "Alright, I'm gonna walk down there." (*Id*). Plaintiff began to walk away and ultimately

---

[4] Plaintiff's Deposition at p. 24-26.

left the park and began walking on the public sidewalk. (*Id*). At that point Defendant Zanichelli replied, "No, no, no, no, you're not free to go right now, you're being detained and if you leave, you'll be arrested." (*Id*).

Defendant Zanichelli told Plaintiff multiple times that the interaction was a "compelled stop", that he was not free to leave, and asked for Plaintiff's identification. (*Id*). Plaintiff continued to walk away from Defendant Zanichelli, asked what a compelled stop was, asked what he would be arrested for, and told Defendant Zanichelli not to touch him. (*Id*).

After about a minute of this back and forth, Defendant Zanichelli pulled out his hand cuffs and attempted to grab Plaintiff's hand. (BWC at 3:32). Plaintiff said, "Yo do not touch me, man do not touch me sir, do not touch me." (*Id*). Defendant Zanichelli told Plaintiff to put his hands behind his back, but Plaintiff ignored the command and continued to tell Defendant not to touch him saying, "Do not grab me or touch me, imma get a law suit." (*Id*). Defendant Zanichelli responded, "Turn around and put your hands behind your back." (*Id*). For the next two minutes Defendant Zanichelli followed Plaintiff around the street attempting to grab and get control of Plaintiff's arm while Plaintiff backed away with his hands raised, telling Defendant Zanichelli not to touch him. (*Id*).

A physical struggle then ensued as Defendant Zanichelli swiftly grabbed Plaintiff's arm and attempted to place him in handcuffs. (SUMF ¶¶ 26(cc), (kk), (oo)). Defendant Zanichelli pinned Plaintiff between himself and Plaintiff's car while attempting to gain control of Plaintiff's arms. (BWC at 3:34). During the struggle, Defendant Zanichelli's BWC became dislodged from his uniform, fell to the ground, and was kicked under Plaintiff's car. (SUMF ¶ 27). At some point during the struggle CCPD Officer Peter Nguyen arrived on scene, ran from his car to where Plaintiff and Defendant Zanichelli were struggling, grabbed Plaintiff's arm and put it behind his

back which allowed Defendant Zanichelli to apply the handcuffs. (SUMF ¶¶ 28–29(c); Nguyen BWC at 3:34).

After Plaintiff was handcuffed, he complained that the handcuffs were too tight and asked for them to be loosened, which Defendant Zanichelli did not acknowledge. (Nguyen BWC at 3:35:08). Plaintiff was then seated on the curb. (SUMF ¶ 13; ¶ 29 (g)). At that point at least five police cars and five police officers had arrived at the scene. (Nguyen BWC at 3:35). After a few minutes, Plaintiff complained again that the handcuffs were too tight and asked for them to be loosened. (Nguyen BWC at 3:36:46). Another officer then adjusted the handcuffs. (Nguyen BWC at 3:36:53).

Plaintiff asked if he was being arrested and why. (Nguyen BWC at 3:37:40). An officer explained that he was not being arrested, he was detained. (Nguyen BWC at 3:37:44). At that point, with Plaintiff handcuffed, sitting on the curb, and surrounded by multiple police officers, none of whom seemed to know why he was being detained, an officer stated, "Mr. Carmichael, listen, there's a municipal ordinance, you're not allowed to be in the park after hours. So we get told by our superiors to tell everyone to clear out. If you don't clear out you are liable to be summonsed." (Nguyen BWC at 3:37:48-3:38:07). Plaintiff cut the officer off and indicated that he understood. (Nguyen BWC at 3:38:08).

Over the next few minutes Plaintiff was told multiple times by multiple officers that he was not under arrest, that he was being detained. (Nguyen BWC at 3:40-3:42). Plaintiff then asked for the handcuffs to be removed multiple times and none of the officers acknowledged the request. (Nguyen BWC at 3:39-3:40). He asked for the officers to "please stop wasting [his] time," write him the citation and let him go. (Nguyen BWC at 3:41). After asking multiple times Plaintiff said, "Can you just write the citation or whatever you wanna write please?" (Nguyen BWC at 3:41).

One of the officers responded, "Now you're at the speed of government. You gotta wait for us to do what we gotta do, you gotta stand by okay." (Nguyen BWC at 3:42). The same officer then asked, "Is there anything else – do you need medical attention or anything like that? Are you good right now? Mr. Carmichael, are you okay right now?" (SUMF ¶ 29 (p)), Plaintiff did not respond to the officer's inquiries and just shook his head. (Nguyen BWC at 3:42).

A medical mask was placed on Plaintiff's face, and he was transported to CCPD central booking in Defendant Zanichelli's patrol vehicle. (SUMF; ¶¶ 30(b)–(d)). Upon arrival at central booking, Plaintiff stated that he could not breathe while wearing a COVID-19 mask. (SUMF ¶ 30(f)). Defendant Zanichelli opened the rear door and lowered the mask. (SUMF ¶ 30(f)–(i)). Plaintiff was asked whether he needed medical attention. Plaintiff ultimately stated, "At this moment, no." (SUMF ¶ 30(k)–(l)).

Defendant Zanichelli completed a "Use of Force Report" wherein he indicated that he used a "Compliance hold" as well as his "Hands/fists" towards Plaintiff. (ECF No. 82-17 at p. 2). It is CCPD's policy that whenever an officer is involved in a use of force incident a supervising sergeant must review the incident, including the BWC footage, and create a report. (SUMF ¶ 33). Sergeant Trocchio reviewed the incident and concluded that it did not warrant any disciplinary action or further training. (ECF No. 82-18 at p. 2).[5]

Internal Affairs conducted a review of the incident. (SUMF ¶ 38). Internal Affairs Detective Bagby concluded that no disciplinary action was warranted, however, Detective Bagby also indicated that there was a need for additional training. (ECF No. 82-19 at p. 2).[6] The report stated, "Officer Zanichelli should have allowed the male to leave from the park, which was the ultimate objective." (Id).

---

[5] Defense Exhibit 15, Sergeant Trocchio's Use of Force Administrative Review Report at p. 2.
[6] Defense Exhibit 16, Internal Affairs Detective Bagby's Use of Force Administrative Review Report at p. 2.

The watch commander, Lieutenant Nieves, also reviewed the incident and created a report. (SUMF ¶ 41). Lieutenant Nieves' Use of Force report indicated that Defendant Zanichelli would benefit from additional training. (ECF No. 82-20 at p. 3).[7] The report stated, "Officer Zanichelli seemed to not be really clear on what infractions he should be engaging people for (minor vs. major). The male was passively resisting his attempts to leave the park, but relented and then proceeded to leave. Then, Officer Zanichelli told him he couldn't leave because now he was being detained. In this case this was a minor municipal ordinance violation and he should have considered letting the male walk away." (*Id*). The report indicated that Lieutenant Nieves had submitted a request for additional training. (*Id*).

Sergeant Trocchio submitted a memorandum to Professional Development Training on August 20, 2020, indicating that he had conducted additional training with Defendant Zanichelli regarding the alternative options available under the circumstances. (ECF No. 82-21 at p. 2).[8]

As a result of the interaction, Plaintiff was charged with resisting arrest and cited for violating the municipal park ordinance. (SUMF ¶ 46). On December 28, 2020, Plaintiff pled guilty in Municipal Court to a reduced municipal ordinance violation of improper behavior and was ordered to pay a fine and court costs. (SUMF ¶ 47).

## III.    STANDARD OF REVIEW

### Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the

---

[7] Defense Exhibit 17, Lieutenant Nieves' Use of Force Command Review at p. 3.
[8] Defense Exhibit 18, Sergeant Trocchio's Memorandum re Additional Training at p. 2.

outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.    DISCUSSION

Defendants move for summary judgment on all counts, requesting the Court dismiss the Amended Complaint in its entirety with prejudice.

## A.     Excessive Force

Plaintiff brings a claim against Defendant Zanichelli for violations of his Fourth Amendment right to be free from the use of excessive force in the course of a personal seizure. Plaintiff argues that the Third Circuit mandates that the Court apply the Fourth Amendment's objective reasonableness test pursuant to *Graham v. Connor* 490 U.S. 386 (1989) and *Santini*, 795 F.3d. (ECF No. 87 at p. 11).[9] Plaintiff argues that when the Court applies the *Graham-Santini* test, summary judgment is inappropriate because when the evidence is viewed in a light most favorable to Plaintiff, each factor weighs in his favor. (*Id.* at p. 14).[10] Defendant Zanichelli argues that Count II should be dismissed with prejudice because the objective footage on his BWC as well as the supplemented footage from Officer Nguyen's BWC, contradicts Plaintiff's version of events showing no slamming, punching, kicking, or other excessive force. (ECF No. 82-1 at p. 29).[11] Further, Defendant Zanichelli argues that he is entitled to qualified immunity. (*Id.* at p. 25).

### 1.     Fourth Amendment Violation

The purpose of the Fourth Amendment of the United States Constitution is to "safeguard the…security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). Specifically, the Fourth Amendment protects a persons' right to be "secure in their persons…against unreasonable…seizures." U.S. Const. amend. IV. As such, to establish a Fourth Amendment violation as the result of excessive force, a plaintiff must first show that seizure occurred, and then that, under the specific circumstances, the seizure itself was unreasonable or that it was conducted in an unreasonable manner. *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). (citing

---

[9] Plaintiff's Brief in Opposition to Motion for Summary Judgment at p. 7.
[10] Pl. Br. at p. 10.
[11] Defendants' Brief in Support of their Motion for Summary Judgment at p. 20.

*Brower v. County of Inyo,* 489 U.S. 593, 599, (1989); *Graham v. Connor,* 490 U.S. 386, 395–96, (1989)).

Under the Fourth Amendment, a "seizure" occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen. *Terry v. Ohio*, 392 U.S. 1, 19 n.16, (1968). To determine whether a personal seizure occurred, courts examine whether police conduct would communicate to a reasonable person that they were not at liberty to ignore the police presence and go about their business. *United State v. Wrensford*, 866 F.3d 76, 85 (3d Cir. 2017). (citing *Florida v. Royer*, 460 U.S. 491, 507-08 (1983)). This includes "whenever an officer restrains the freedom of a person to walk away." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020)(quotations omitted).

The reasonableness of a seizure is an objective question that "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (cleaned up). The objective reasonableness test is a case specific inquiry that requires the court to examine "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9 (1985)).

Further, reasonableness is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham* 490 U.S. at 396. In the context of the use of force, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

In this case, there is no dispute that Plaintiff was seized. Therefore, the only question to resolve is whether or not the force used was objectively reasonable or not. The Court will engage

an analysis of the *Graham* factors to determine if, as a matter of law, the force Defendant Zanichelli used was reasonable.

The first *Graham* factor considers the severity of the crime. In this instance the Plaintiff was alleged to have violated a municipal ordinance by being in the Waterfront Park after dark. Violation of this ordinance may result in a citation or summons.[12] It is undisputed that Plaintiff's behavior constituted a minor, victimless, nonviolent violation that at best should have resulted in a fine. Although Plaintiff was charged with resisting arrest, in New Jersey resisting arrest is a "disorderly persons offense" which "carr[ies] less restrictive punishments upon conviction." *Santini*, 795 F.3d at 419. Plaintiff ultimately pleaded guilty in Municipal Court to an even lesser charge of improper behavior. Given the minor nature of the violations alleged, charged, and ultimately convicted, a reasonable jury could find that this factor weighs in Plaintiff's favor.

The second *Graham* factor considers whether Plaintiff "posed an imminent threat to the safety of the police or others in the vicinity." *Id.* Here, Plaintiff was verbally confrontational and did not initially comply with Defendant Zanichelli's verbal commands. On the other hand, Plaintiff was unarmed, did not make any verbal threats, avoided making any physical contact with Defendant Zanichelli, and in fact expressly told Defendant Zanichelli multiple times not to touch him and to keep distance between them. Moreover, Plaintiff's hands remained visible and raised for the entire interaction, one hand holding a cell phone and purportedly recording the interaction.[13] Nothing in the record indicates that Plaintiff was a danger to Defendant Zanichelli, to any of the

---

[12] Under N.J.S.A. § 40:49-5 the sentence for violation of a municipal ordinance may include "one or more of the following: imprisonment in the county jail or in any place provided by the municipality for the detention of prisoners, for any term not exceeding 90 days; or by a fine not exceeding $2,000; or by a period of community service not exceeding 90 days."

[13] The Court was not provided, and thus has not reviewed, any video footage of the interaction from Plaintiff's cell phone.

at least five responding officers, or to any bystanders.[14] As such, with all inferences drawn in Plaintiff's favor as they must be, a reasonable jury could find that this factor weighs in Plaintiff's favor.

The third *Graham* factor examines whether Plaintiff attempted to actively resist or flee. Nothing indicates that Plaintiff attempted to flee. Plaintiff was charged with resisting arrest but was never convicted of that charge. The objective evidence shows that Plaintiff walked away from Defendant Zanichelli, who then advised Plaintiff that he was not free to walk away because he was being detained. After that, Plaintiff continuously backed away from Defendant Zanichelli, attempted to keep distance between them, and told Defendant Zanichelli not to touch him. Plaintiff did not comply with commands to place his hands behind his back and Defendant Zanichelli eventually grabbed Plaintiff's arm and used force to restrain Plaintiff in handcuffs. When Defendant Zanichelli grabbed Plaintiff's arm, Plaintiff appeared to struggle to try to get away from Defendant Zanichelli, which is indicative of resisting arrest. When construing the facts in Plaintiff's favor, this factor "is somewhat inconclusive" because while there is evidence that Plaintiff resisted arrest, "his resistance was not violent," *id.*, and, as noted by Lieutenant Nieves, any resistance was passive.[15] (ECF No. 82-20 at p. 3)

Courts analyze the *Graham* factors[16] in order to "weigh the invasion on [Plaintiff's]

---

[14] There is no evidence that there were bystanders in the area, however, the Court notes that even if there had been, none of Plaintiff's actions indicated that he would have been a danger to them.

[15] The Court is strained to conclude that Plaintiff resisted arrest based on the conduct that has been described.

[16] In *Sharrar v. Felsing*, the Third Circuit examined additional factors that influence the balancing of interests. These factors included: "[4] the possibility that the persons subject to the police action are themselves violent or dangerous, [5] the duration of the action, [6] whether the action takes place in the context of effecting an arrest, [7] the possibility that the suspect may be armed, and [8] the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). (brackets added). A reasonable jury could find that these factors weigh in favor of Plaintiff as well. During the interaction with Defendant Zanichelli, the Plaintiff was alone, unarmed, and nonviolent. The interaction was not initiated to effect an arrest, and by the time Defendant Zanichelli physically engaged Plaintiff, multiple officers began responding to the scene, with at least five patrol cars responding and at least five officers present at the scene.

individual rights against the interest of the [Defendants]." *Id.* Based on Plaintiff's version of the facts, the "balance tips in his favor." *Id.* When drawing inferences in Plaintiff's favor, as the Court must, the intrusion on Plaintiff's right was not insignificant. As a consequence of violating a minor municipal ordinance and refusing to provide identification, Plaintiff was grabbed, slammed down and pinned against a car, handcuffed, and detained, despite being unarmed, nonviolent, and eventually attempting to comply with Defendant Zanichelli's initial order to vacate the park. In contrast, there was "limited justification for the government's actions" to even warrant detention. *Id.* Plaintiff was alleged to have violated a minor municipal ordinance, did not threaten violence, did not engage in any violent act, was unarmed, and was alone. Further, Plaintiff's willingness to ultimately comply with Defendant Zanichelli's directive to leave the Waterfront Park was thwarted by Defendant Zanichelli himself, who chose to escalate the interaction from giving a directive, to detention, to arrest merely because Plaintiff was confrontational and antagonistic.

A reasonable jury could find that Defendant Zanichelli's use of force—handcuffing Plaintiff—under the circumstances, violated Plaintiff's Fourth Amendment rights.

### 2. Qualified Immunity

Defendant Zanichelli argues that he is entitled to qualified immunity with regard to the claim of excessive force because, as a matter of law, Plaintiff cannot establish that Defendant Zanichelli violated Plaintiff's Fourth Amendment rights by using excessive force.

Qualified immunity shields government officials from civil liability for money damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The doctrine of qualified immunity arose from the tension that exists between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

13

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As such, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court has established a two-prong framework under which courts analyze whether a government official is entitled to qualified immunity. *Pearson*, 555 U.S. at 232. The court must determine whether the plaintiff has established a violation of a constitutional right and if that constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Id*. If the Court determines that the plaintiff's constitutional right was violated and that the right was clearly established, then the government official is not entitled to qualified immunity. However, if the Court determines either that there was no constitutional violation or that the constitutional right was not clearly established, then the government official is entitled to qualified immunity.

While in days past the Supreme Court required the lower courts to apply the qualified immunity analysis by rigidly adhering to the proscribed sequence in its analysis, the Supreme Court has acknowledged that there is a benefit to allowing flexibility when courts are required to engage a case specific analysis to determine difficult legal questions. *See Id*. at 236-38. Accordingly, courts are permitted to begin the analysis with whichever prong best serves the case. *Id*.

Since this Court has determined *supra* that there are genuine disputes of material fact regarding whether Defendant Zanichelli's use of force was excessive or not, Plaintiff has sufficiently established a constitutional violation for the purposes of the qualified immunity analysis. Therefore, the Court turns to whether Plaintiff's right was clearly established.

Defendant Zanichelli's assertion that he is entitled to qualified immunity as to Plaintiff's excessive force claim primarily rests on the argument that there was no constitutional violation. "[T]he party asserting the affirmative defense of qualified immunity bears the burden of persuasion on both prongs at summary judgment." *Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (cleaned up). This means that the defendant must show either "that there was no genuine dispute of material fact to refute their contention that they did not violate [Plaintiff's] constitutional rights as he asserted them, or show that reasonable officers could not have known that their conduct constituted such a violation when they engaged in it." *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). If the defendant fails on the first prong, he is "only entitled to summary judgment if [he] can bear the burden of showing on the second prong, that reasonable officers could not have known that their actions violated clearly established law." *Mack*, 63 F.4th at 227.

Here, Defendant Zanichelli did not carry that burden. Defendant's cursory assertion that, "[d]efendants have clearly met their burden based on the objective evidence that Zanichelli was not plainly incompetent or knowingly violated the law, nor would a reasonable officer clearly believe the conduct was unlawful," is not enough to establish, as a matter of law, that Plaintiff's right was not clearly established.

On the other hand, Plaintiff framed his right stating that "[t]he right to be free from excessive force during a nonviolent encounter is well-established." (ECF No. 87 at p. 17). Further, Plaintiff argued that "[a] reasonable officer would have known that escalating a civil ordinance violation into a physical arrest without a clear threat or resistance violates the Fourth Amendment." (*Id*). However, Plaintiff provides no case law at all, let alone precedential case law, to support his assertion that his right was clearly established.

Because neither party has meaningfully nor adequately argued whether Plaintiff's right was

15

clearly established, the Court must *sua sponte* address this issue because "while issues of fact may preclude a definitive finding on the question of whether the plaintiff's rights have been violated, the court must nonetheless decide whether the right at issue was clearly established. Failure to do so is error." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 n. 4 (3d Cir. 2015).

### a.    Whether Plaintiff's Right was Clearly Established

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Additionally, "in the light of pre-existing law the unlawfulness [of the challenged actions] must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Therefore, "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). (cleaned up). This precedential requirement mandates that "the rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). (cleaned up). Accordingly, courts in the Third Circuit "look first for applicable Supreme Court precedent. If none exists, [courts] consider whether there is a case of controlling authority in [the Third Circuit] or a robust consensus of cases of persuasive authority in the Courts of Appeals." *New Jersey Chinese Cmty. Ctr. v. McAleer*, No. CV 21-08320 (GC) (RLS), 2025 WL 1564869, at *9 (D.N.J. June 3, 2025) (citing *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020)).

Further, a clearly established right must be properly framed with the appropriate level of specificity. *Mack*, 63 F.4th at 228. The right cannot be defined "at a high level of generality" because the relevant question is whether the officer "acted reasonably in the particular circumstances that he or she face[d]." *McAleer*, 2025 WL 1564869 at *9. The purpose of the

clearly established prong is to ensure that officers have "'fair warning' that [their] conduct deprived [their] victim of a constitutional right." *Hope*, 536 U.S. at 740. As such, "[i]t is essential to begin by "fram[ing] the right 'in light of the specific context of the case,' with all reasonable inferences drawn in the nonmovant's favor." *Mack*, 63 F.4th at 228. The Third Circuit has "adopted a broad view of what constitutes an established right of which a reasonable person would have known." *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) (quoting *Burns v. County of Cambria*, 971 F.2d 1015, 1024 (3d Cir.1992)). As such, a right may be clearly established even if there is not "precise factual correspondence" between cases. *Id.*

First, the Court must frame the contours of the right by defining the specific context of the case. *See Spady*, 800 F.3d at 638. Here, the specific context involves an unarmed individual who remained in a public park after hours, in violation of a municipal ordinance. After a law enforcement officer issued a general directive for all occupants to leave the park, the individual did not immediately comply and engaged the officer in a verbally confrontational manner. However, he did not make any threats, nor did he display a weapon or engage in any violent or physically threatening conduct. Further, his hands remained visible and raised throughout the encounter. When he relented and attempted to comply with the officer's order, the officer stated that he was no longer free to leave, seized him, placed him in handcuffs, and charged him with resisting arrest.

Next, the Court must determine the specific right at issue. *Id.* In this case, the specific constitutional right under the Fourth Amendment in this context is the right of Plaintiff to be free from the unreasonable use of force in the course of a personal seizure that resulted from police interaction where Plaintiff's response to an officer's verbal directive was confrontational and noncompliant, but wherein Plaintiff was unarmed, nonviolent, nonthreatening, did not flee, and

17

the law that he was alleged to have violated was a minor, victimless, nonviolent, lower level violation. For the purposes of qualified immunity, the question is "whether the law in this context was so well-established that it would have been apparent to a reasonable [officer]" that the level of force used constituted unreasonable force in violation of the man's Fourth Amendment right. *Spady*, 800 F.3d at 638-39. The Court finds that Plaintiff's right was clearly established.

In *El v. City of Pittsburgh*, the Third Circuit held, based on a consensus of persuasive authority from our sister Circuits, that "an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020). In this case, Plaintiff, who was unarmed and nonviolent, was verbally confrontational and refused to provide his identification after being approached about a municipal ordinance. Plaintiff was then subjected to physical force by being grabbed, slammed down and pinned against a car, handcuffed, and detained.

Admittedly, *El* was published on September 16, 2020, which was twenty-seven days after the incident between Plaintiff and Defendant Zanichelli, which means that Defendant Zanichelli was not bound by this holding at the time of the events that give rise to this case. Despite that, the holding in *El* is still noteworthy because the Third Circuit determined that this right was clearly established based on an analysis of persuasive Circuit authority that *predates* the events in this case. *Id.* at 339-40. Specifically, the Third Circuit found that the specific right was clearly established based on *Deville v. Marcantel*, 567 F.3d 156, 161 (5th Cir. 2009),[17] *Shreve v.*

---

[17] "[T]he plaintiff was pulled over for speeding. She said she was following the speed limit, swore, refused to get out of her car, and rolled up her window. Officers smashed the window, pulled her out of the car, threw her up against it, and handcuffed her. The district court granted summary judgment to the officers on the plaintiff's § 1983 excessive force claim based on qualified immunity, and the Fifth Circuit reversed." *El*, 975 F.3d at 339. (citations omitted).

*Jessamine County Fiscal Court*, 453 F.3d 681, 683-84 (6th Cir. 2006),[18] *Montoya v. City of Flandreau*, 669 F.3d 867, 869 (8th Cir. 2012),[19] and *Thornton v. City of Macon*, 132 F.3d 1395, 1398 (11th Cir. 1998).[20]

In addition to the consensus of persuasive authority recognizing that "an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down," *El*, 975 F.3d at 340, the Third Circuit has expressly held that "the right of an arrestee to be free from the use of excessive force in the course of his handcuffing" is clearly established, particularly where the officer "faced rather benign circumstances." *Kopec*, 361 F.3d at 778. In *Kopec*, an officer responded to an anonymous call that the plaintiff and his girlfriend were trespassing on a frozen lake. *Id.* at 774. Despite initially complying with the officer's directive to get off the lake, the plaintiff refused to provide identifying information and instructed his girlfriend to do the same. *Id.* After requesting the information multiple times, the officer became annoyed and arrested and handcuffed plaintiff for disorderly conduct. *Id.* Plaintiff complained that the handcuffs were too tight and requested that they be loosened multiple times.

---

[18] "[T]he police went to the plaintiff's home to execute an arrest warrant for a misdemeanor, but she hid in a closet and disobeyed orders to come out. The officers pepper sprayed her, and when she refused to present her hands for cuffs, they struck her with a stick and repeatedly took a knee to her back. The district court granted summary judgment to the officers, but the Sixth Circuit reversed, holding that they were not entitled to qualified immunity." *El*, 975 F.3d at 339. (citations omitted).

[19] "[P]olice were called to a home where a man and woman were arguing. The woman "raised her right hand in a fist and took a step forward toward [the man]." The officers attempted to handcuff her, and when she resisted, swept her leg from under her so that she fell to the ground. The plaintiff broke her leg in the fall. The district court granted summary judgment to the officer who swept the plaintiff's leg, concluding that he was entitled to qualified immunity. The Eighth Circuit reversed." *El*, 975 F.3d at 339.

[20] "[A] woman called the police to retrieve a mattress from the apartment of a man with whom she once lived. The man refused to return the mattress and told the police to leave. The police persuaded him to open the door and then "charged into the apartment[,] .... threw [him] to the floor, cuffed his hands behind his back, picked him up by his arms, dragged him outside and shoved him into a police car." His bystanding friend was treated similarly. The district court denied the officers' summary judgment motions, ruling that they were not entitled to qualified immunity. The Eleventh Circuit affirmed." *El*, 975 F.3d at 339–40. (citations omitted).

The officer ignored the request for approximately ten minutes while the plaintiff's pain escalated. *Id.*

Here, Plaintiff was suspected only of a minor violation and, while verbally confrontational and noncompliant with commands to provide identification, was unarmed, nonviolent, and posed no physical threat. Nonetheless, after advising Plaintiff that he was no longer free to leave, Defendant Zanichelli used physical force to restrain and handcuff him, including grabbing his arm, pinning him against a vehicle, and applying handcuffs in a manner Plaintiff complained caused pain. While Defendant Zanichelli argues that the BWC footage directly contradicts Plaintiff's account of the incident, the Court, having extensively reviewed the footage, disagrees. During the altercation with Plaintiff, Defendant Zanichelli's BWC became dislodged and was kicked under a car. Before it was kicked under the car, the footage shows Defendant Zanichelli pushing Plaintiff up against his car, pinning him there, and struggling to pull Plaintiff's hands behind his back. Defendant Zanichelli provided additional BWC footage from Officer Nguyen to supplement the view of the interaction, however Officer Nguyen's BWC footage is not the picture of clarity the Defendant contends it is. Officer Nguyen arrived on the scene, immediately ran to help Defendant Zanichelli, and became involved in the altercation with Plaintiff. His BWC footage was largely obstructed throughout the interaction such that the Court could not determine, as a matter of law, that Plaintiff was not slammed down on the car with unreasonable force.

Given the factual disputes that remain regarding whether Plaintiff's constitutional right was violated, and having determined that Plaintiff's right was clearly established, the Court cannot, at this juncture, find that Defendant Zanichelli is entitled to qualified immunity as to his use of force.

Therefore, the Defendants' motion for summary judgment as to Count II is **DENIED**.

**B.    Malicious Prosecution and False Arrest**

Plaintiff also brings claims for Unlawful Arrest (Count I) and Malicious Prosecution (Count III) against Defendant Zanichelli. Defendant Zanichelli argues that these claims are both barred by *Heck v. Humphrey*. Plaintiff does not substantively rebut this assertion.

It is well established that when a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Courts in the Third Circuit have found that pleading guilty to a charge, even a lesser one, precludes a plaintiff from bringing a § 1983 claim for false arrest or malicious prosecution. *Walker v. Clearfield Cnty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011). (holding that "a guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause."); *McGann v. Collingswood Police Dep't*, No. CIV. 10-3458 NLH/KMW, 2012 WL 6568397, at *10 (D.N.J. Dec. 17, 2012) ("even assuming that Plaintiff could prove the absence of probable cause, his claims for false arrest and false imprisonment would still fail because a favorable finding on these claims would necessarily imply the invalidity of Plaintiff's municipal court guilty plea."); *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) (finding that a malicious prosecution claim was barred under *Heck* when the plaintiff plead *nolo contendere* which resulted in a valid conviction, and the plaintiff could not establish the element of favorable termination as required under *Heck*).

Here, Plaintiff received a summons for violating a municipal ordinance and was charged with resisting arrest. Plaintiff later plead guilty in Municipal Court to a lesser charge, improper conduct, which arose out of his conduct on the night of August 20, 2020. *Heck* precludes Plaintiff from now bringing claims that would undermine his conviction because he cannot show that the

conviction terminated in his favor. As such, Plaintiff's claims for False Arrest and Malicious Prosecution are barred under *Heck*.

Therefore, the Defendants' motion for summary judgment as to Counts I and III are **GRANTED**.

### C.    Failure to Intervene

Plaintiff brings a claim of Failure to Intervene (Count VIII) against all defendant officers. This claim is admittedly a bit confounding at this stage. Defendants correctly point out that "Plaintiff asserts that Zanichelli was the officer who caused the alleged "excessive force," while also claiming Zanichelli failed to intervene. This is contradictory to the requirement that plaintiff show another officer exercised a use of force." (ECF No. 82-1 at p. 30). Plaintiff's Opposition does not explicitly clarify this contradiction but instead asserts that Internal Affairs recognized that Defendant Zanichelli needed additional training as a result of the interaction with Plaintiff. Plaintiff also asserts that "Officer Nguyen's failure to intervene, despite arriving during the restraint and participating in handcuffing, raises a triable issue." (ECF No. 87 at p. 17).

To establish a claim for failure to intervene, a plaintiff must show that a fellow officer "observe[d] or had reason to know: (1) that excessive force [was] being used; (2) that a citizen was being unjustifiably arrested; or (3) that any constitutional violation [was being] committed by a law enforcement official." *Merman v. City of Camden*, 824 F. Supp. 2d 581, 600 (D.N.J. 2010). Further, the officer must have had a "realistic and reasonable opportunity to intervene." *Id.* Thus, Plaintiff must establish that one of the officers observed another officer violating one of Plaintiff's constitutional rights, had a realistic opportunity to intervene, and chose not to. There is no evidence in the record to support this. Plaintiff's circular, even nonsensical, argument which at is core asserts that Defendant Zanichelli failed to intervene in his own behavior, cannot proceed.

Plaintiff's contention that Internal Affairs concluded that Defendant Zanichelli would benefit from additional training does not establish that he observed another officer committing a constitutional violation. Instead, it goes to whether Defendant Zanichelli himself violated Plaintiff's rights. This argument can only plausibly support the idea that another officer should have intervened in Defendant Zanichelli's alleged excessive force. While Plaintiff's opposition asserts that Officer Nguyen should have intervened, Officer Nguyen is a non-party.

Pursuant to Local Civil Rule 56.1, Defendants submitted a Statement of Undisputed Facts (ECF No. 82-2) along with their motion for summary judgment. As required under the Rule, Plaintiff submitted a responsive statement wherein he either admitted that the fact was undisputed or denied that it was undisputed and pointed to evidence in the record to support the dispute. (ECF No. 86). In his response Plaintiff "ADMITTED" that "Peter Nguyen ("Nguyen"), a non-party to this action, is a police officer who was employed by CCPD at the time of the incident. (Ex D-4, Nguyen Additional Information Report)." (ECF No. 86 at ¶ 8). In admitting that Officer Nguyen was a non-party to the action, Plaintiff is precluded from asserting in his opposition brief that the failure to intervene claim is triable against him. "Judicial admissions are concessions in pleadings or briefs that bind the party who makes them." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006). When a plaintiff admits that someone is a non-party, this creates a binding factual admission that the person is not subject to the claims in the current litigation. As such, the belated claim that Officer Nguyen failed to intervene fails. Thus, this claim fails as a matter of law.

Therefore, the Defendants' motion for summary judgment as to Count VIII is **GRANTED**.

### D.    Battery

Plaintiff brings a state law claim against Defendant Zanichelli for Battery (Count X). Defendant Zanichelli argues that Plaintiff is barred from bringing this claim under the New Jersey

Tort Claims Act because he never filed a torts claims notice. Plaintiff argues that the New Jersey Torts Claim Act does not bar claims arising from intentional torts when committed outside the scope of lawful authority.

Under the New Jersey Tort Claims Act, a plaintiff is required to file a tort claims notice within 90 days after a cause of action accrues. N.J.S.A. 59:8-8. This notice requirement is a mandatory prerequisite for bringing suit against a public entity or public employee, with limited exceptions for sexual assault cases and provisions for late filing under extraordinary circumstances. N.J.S.A.§ 59:8-8; N.J.S.A. § 59:8-9; N.J.S.A. § 59:8-3.

The purpose of the notice requirement is to provide the public entity with time to conduct an administrative review of the incident and attempt to settle meritorious claims, adequately investigate the facts, and prepare a defense. *Velez v. City of Jersey City*, 850 A.2d 1238, 1242. Further, the notice requirement affords the public entity the opportunity to correct the conditions or practices giving rise to the claim, and to inform the State as to its potential liability or indebtedness. *Id.* Nothing in the Act indicates that a plaintiff is relieved of the notice requirement in the case of an intentional tort. Further, the New Jersey Supreme Court has held that "notice provisions in the Act apply to causes of action based on the intentional conduct of a public employee." *Id.* at 293.

The Tort Claims Act notice requirements are strictly construed and failure to adhere to the statutory timeline acts as a permanent bar to the plaintiff's claims. *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 61 A.3d 902, 915 (2013). The New Jersey Supreme Court has acknowledged the "harshness" of this rule but noted that such is "alleviated by the statutory provision that allows the late filing of notice of a claim under limited circumstances." *Id.*

A plaintiff may proceed with their tort claim if a judge of the Superior Court permits such

filing after determining (1) that the public entity or public employee would not be "substantially prejudiced" and (2) that the plaintiff submits an affidavit that shows "sufficient *reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed* by section 59:8–8 of this act." *Id.* at 147; N.J.S.A. § 59:8-8.

On this record, Plaintiff's failure to provide notice under the Tort Claims Act is fatal. The New Jersey Supreme Court has been clear, the notice requirement applies to intentional torts, and failure to comply with the notice requirement, barring extraordinary circumstances, forever bars plaintiff's claim.

Therefore, Defendants' motion for summary judgment as to Count X is **GRANTED**.

## E.    Monell Liability

Plaintiff brings a claim against Camden County and Defendant Rodriguez, asserting municipality liability under the *Monell* doctrine for maintaining an unconstitutional custom or practice. He also brings a claim against Defendant CCPD,[21] Defendant Rodriguez,[22] and Camden

---

[21] In New Jersey, a police department is not a separate entity from the municipality, it is "merely an administrative arm of the local municipality" rendering it an improper defendant that cannot be sued in conjunction with the municipality. *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004); *Foster v. Essex Cnty. Corr. Facility*, No. 23-1613 (BRM) (MAH), 2023 WL 6366563, at *6 (D.N.J. Sept. 28, 2023). As such, Defendant CCPD is not a proper defendant and Claim VI against it must be dismissed.

[22] While a police chief may be sued under § 1983 under certain circumstances, the capacity in which he is sued is paramount. When sued in his official capacity, the police chief is effectively a stand-in for the municipality itself. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). ("[A] judgment against a public servant "in his official capacity" imposes liability on the entity that he represents."). As such, just as with a police department, a police chief cannot be sued in his official capacity in conjunction with the municipality. *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131 (D.N.J. 2017) ("[W]here claims against an officer in his official capacity are duplicative of claims against the municipality, those claims are properly dismissed as redundant.") When a police chief is sued in his individual capacity, he cannot be held liable under a theory of *respondeat superior*, which means he must have personal involvement in the constitutional violation. ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.") In this case, Plaintiff brings claims against Defendant Rodriguez in both his official and individual capacities. Official capacity liability is inappropriate because it would be duplicative of the claims against Camden County. To hold Defendant Rodriguez individually liable, the record must show that he was personally involved in the alleged constitutional violation. However, nothing in the record indicates that Defendant Rodriguez had any interaction with Plaintiff whatsoever let alone that he was personally involved in the alleged constitutional violation. As such, Claims VI and VII against Defendant Rodriguez fail and must be dismissed.

County[23] for municipal liability under *Monell* for failure to train or supervise.

While a public entity may be held liable for constitutional violations under § 1983, it may not be held liable under a theory of *respondeat superior* for employee actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Under the *Monell* doctrine, liability only attaches if the public entity itself caused the constitutional violation through an official policy or custom. *Lesher v. Zimmerman*, 822 F. App'x 116, 121 (3d Cir. 2020). This includes situations where the entity knowingly permits a pattern of unconstitutional practices to continue without redress or fails to supervise or train employees despite a known pattern of unconstitutional conduct. *Gretzula v. Camden Cnty. Tech. Schs. Bd. of Educ.*, 965 F. Supp. 2d 478, 490 (D.N.J. 2013)(quotations omitted). If, under those circumstances, the entity fails to take action, such failure can "amount[] to deliberate indifference to the rights of people with whom the police come[] into contact." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).

### 1.    Custom or Policy

Plaintiff argues that CCPD's routine practice of clearing the parks after curfew and the lack of guidelines for how to conduct curfew enforcement has resulted in a "de facto policy" that "disproportionately affects certain individuals." Defendants contend that Plaintiff cannot support his claim that the park clearing was an unconstitutional de facto policy without more than his own anecdotal observations which are based solely on his personal experience over two nights.

Municipal liability for an unconstitutional custom or policy can be established in two ways:

> Policy is made when a decisionmaker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, such practices of state officials are so permanently and well-settled as to virtually constitute law.

---

[23] As the claims against Defendant CCPD and Defendant Rodriguez have been dismissed, Camden County is the only defendant that remains for the purposes of municipal liability under *Monell*.

*McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir.2009) (citations, quotation marks, and brackets omitted).

To establish a custom the plaintiff is required to provide "proof of knowledge and acquiescence by the decisionmaker." *Id.* If the plaintiff can establish the existence of an unconstitutional custom or policy, he then "bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990).

To survive summary judgment, Plaintiff must "present[] sufficient evidence from which a reasonable jury could infer[] that the [Defendant] knew about and acquiesced in a custom tolerating" an unconstitutional practice by police officers. *Beck v. City of Pittsburgh,* 89 F.3d 966, 976 (3d Cir. 1996). The Third Circuit has found that a combination of qualitative and quantitative evidence is sufficient to establish a custom. *Id.* at 975. Specifically, the Court in *Beck v. City of Pittsburgh* held that statistical evidence in combination with evidence of actual written complaints, and indications of how the existing policy or custom lacked constitutional safeguards was sufficient evidence in which a reasonable jury could infer the existence of an unconstitutional custom or policy. *Id.* The Court noted that expert testimony could also be evidence to bolster such an assertion but was not a requirement based on the circumstances of the case. *See Id.* at 975.

Here, Plaintiff has provided no evidence beyond his own firsthand account of CCPD officers riding by the Waterfront Park, directing all occupants to leave the park, and addressing Plaintiff directly when Plaintiff did not leave the park. Plaintiff has provided no statistics regarding how this policy "disproportionately affects certain individuals." Plaintiff has not provided evidence of any complaints made regarding the Waterfront Park clearing policy. Plaintiff has not provided any evidence regarding how the policy specifically lacks constitutional safeguards.

Plaintiff has not provided any expert testimony to support his contentions whatsoever.

Simply stated, Plaintiff has not pointed to anything in the record that would permit a reasonable jury to infer that Defendants knew and acquiesced to a policy or custom that tolerated CCPD police officers engaging in unconstitutional practices while enforcing the park clearing ordinance.

Therefore, Defendants' motion for summary judgment as to Count VI is **GRANTED**.

### 2.    Failure to Train or Supervise

To support his failure to train or supervise claim, Plaintiff points to the Internal Affairs and supervisor reviews that identified Defendant Zanichelli's need for additional training. Plaintiff argues that these reports are evidence that Camden County knew of and acquiesced to training deficiencies which establishes deliberate indifference. Defendants argue that Plaintiff does not offer any evidence to establish that Defendants were even aware of a training deficiency let alone a pattern of deliberate indifference. Defendants also argue that Plaintiff fails to identify what training was lacking and how those training deficiencies could be cured.

To establish municipal liability for failure to train or supervise the plaintiff must show that the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This means that the plaintiff must point to evidence that permits a reasonable jury to infer that "(1) municipal policymakers kn[e]w that employees [would] confront a particular situation, (2) the situation involve[d] a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Here, Plaintiff points to the Internal Affairs and supervisor reports that indicate that

Defendant Zanichelli needed additional training. Plaintiff contends that these reports directly implicate the Defendants' alleged knowledge and acquiescence because the reports acknowledge that training deficiencies existed but there was no disciplinary action taken, nor additional training provided. However, while the Plaintiff is correct that the two reports indicated that Defendant Zanichelli required additional training, the record also indicates that the Internal Affairs officer requested additional training. Further, there is evidence that Defendant Zanichelli did receive additional training. A memo to Professional Development Training indicated that Defendant Zanichelli's supervisor, Sergeant Trocchio, reviewed the incident with Defendant Zanichelli and provided additional training on alternative courses of action based on the circumstances.

In sum, to support his claim for failure to train officers, Plaintiff points to two reports that were generated in response to the incident which identified the need for one officer who had served the CCPD for eight months[24] to receive additional training. One of those reports explicitly stated that a request for additional training was submitted and further evidence indicates that additional training was provided. Plaintiff points to no other evidence in the record to indicate that Defendants knew about an alleged training deficiency let alone that there was a pattern of unconstitutional conduct by officers that resulted from those training deficiencies, and that the Defendants were deliberately indifferent to same.

Despite Plaintiff's contention to the contrary, the evidence in this record is insufficient, as a matter of law, to serve as evidence of Defendants' deliberate indifference to training deficiencies.

Therefore, Defendants' motion for summary judgment as to Count VII is **GRANTED**.

---

[24] *See* ECF No. 87-17 at p. 2

**V.     CONCLUSION**

For all of the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 82) is **GRANTED IN PART AND DENIED IN PART**. An Order reflecting the same will follow.

Dated:    February 6, 2026

KAREN M. WILLIAMS
United States District Judge