# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN CARMICHAEL, an individual<br><br>Plaintiff,<br><br>v.<br><br><br>CAMDEN POLICE DEPARTMENT, a governmental entity,<br><br>COUNTY OF CAMDEN, a governmental entity,<br><br>CHIEF OF POLICE GABRIEL RODRIGUEZ, as an individual and in his official capacity,<br><br>OFFICER JESSE ZANICHELLI, as an individual and in his official capacity, and<br><br>JOHN DOE OFFICERS 1- 10 (fictitious names), in their official capacity<br><br>ABC Entities 1-10 (fictitious entities),<br><br>Defendants. | Civil Action No.: 1:22-cv-05019-KMW-EAP<br><br><br>**JOINT FINAL PRETRIAL ORDER** |

## JOINT FINAL PRETRIAL ORDER

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and the Court's Pretrial Order, the parties respectfully submit this Joint Final Pretrial Order in the above-captioned matter, which is scheduled for a jury trial before the Honorable Karen M. Williams, United States District Judge. This Joint Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. See

22-5019 - CARMICHAEL - FINAL - JFPTO

Fed. R. Civ. P. 16(e). Counsel are urged to move to amend in a timely fashion any portion of the

Order that must be changed or modified between the filing of the Order and the trial date.

## I.    APPEARANCES

**Counsel for Plaintiff:**
Frank R. Schirripa, Esq.
HACH ROSE SCHIRRIPA & REHNS, LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
T: 646-992-8128

**Counsel for Defendants:**
William F. Cook, Esq.
Joseph D. Clifford, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
T: (856) 854-8900
*Counsel for Defendants*
*Camden County Police Department,*
*County of Camden,*
*Chief of Police Gabriel Rodriguez,*
*and Officer Jesse Zanichelli*

## PART I.    JURISDICTION and BRIEF SUMMARY OF THE CASE:

### A.  Jurisdiction

This Court has subject-matter jurisdiction over Plaintiff's federal civil rights claims pursuant to 28 U.S.C. § 1331, as the action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b) because all events giving rise to the claims occurred within this District, specifically in Camden County, and all Defendants reside or are employed within this District.

### B.  Brief Summary of the Case

This civil rights action arises from an incident on August 20, 2020, at the Camden Waterfront Park, during which Plaintiff Steven Carmichael alleges he was unlawfully detained, subjected to excessive force, and improperly charged by Officer Jesse Zanichelli of the Camden County Police Department.

Plaintiff contends that he was seated near the waterfront when Officer Zanichelli approached him after announcing that the park was closed. Plaintiff asserts that although he attempted to walk away, the officer escalated the encounter without legal justification, placed hands on him, pursued him around his vehicle, and ultimately used force to handcuff him despite Plaintiff being unarmed, non-violent, and posing no threat. Plaintiff further alleges that he was detained in a patrol vehicle without air conditioning while wearing a COVID-19 mask, causing breathing distress.

Plaintiff brings claims under 42 U.S.C. § 1983 for unlawful seizure, excessive force, malicious prosecution, and failure to intervene; claims under the New Jersey Civil Rights Act; and a state-law claim for battery. Plaintiff also asserts Monell claims against Camden County, the Camden County Police Department, and Chief Gabriel Rodriguez for maintaining unconstitutional customs, policies, or practices, and for failing to train and supervise officers regarding de-escalation, use of force, and proper handling of minor ordinance violations.

Defendants deny all liability and contend that Officer Zanichelli acted reasonably under the circumstances, that Plaintiff resisted lawful commands, and that the force used was minimal and appropriate. Defendants further dispute Plaintiff's claimed damages.

Following summary judgment, Plaintiff's claim for excessive force proceeds to trial. All other claims were dismissed and do not proceed to trial.

## PART II. STIPULATED FACTS

The parties stipulate to the following facts solely for purposes of trial management and without waiving any claims, defenses, or evidentiary objections:

1. On August 20, 2020, Plaintiff Steven Carmichael was present at the Camden Waterfront Park in Camden, New Jersey.
2. At the time of the incident, Officer Jesse Zanichelli was employed as a police officer with the Camden County Police Department and was acting under color of state law.
3. Officer Zanichelli was on duty and operating a marked patrol vehicle equipped with a public-address system and body-worn camera.
4. Officer Zanichelli approached Plaintiff at the Camden Waterfront Park on August 20, 2020.
5. A physical interaction occurred between Plaintiff and Officer Zanichelli, after which Plaintiff was placed in handcuffs.
6. Plaintiff was transported from the scene to the Camden County Police Department central booking in a patrol vehicle.
7. Plaintiff was issued a municipal citation related to the incident.
8. Plaintiff later pled guilty in Camden Municipal Court to a reduced municipal ordinance violation of improper behavior arising from the August 20, 2020, incident.
9. The Camden County Police Department generated a Use of Force Report and conducted internal administrative reviews of the incident.
10. Body-worn camera footage exists from Officer Zanichelli and Officer Nguyen documenting portions of the encounter.

## PART III.    PLAINTIFF'S CONTESTED FACTS

A. Plaintiff intends to prove the following contested facts with regard to liability:

1. On August 20, 2020, Plaintiff Steven Carmichael was seated in a camping chair near the Camden Waterfront when Officer Jesse Zanichelli approached him without a lawful basis.
2. Plaintiff had not committed any crime, posed no threat, and was unarmed, non-violent, and seated calmly when the officer-initiated contact.
3. Plaintiff did not hear or understand any lawful order requiring him specifically to leave the park, and other individuals remained in the park without being approached or detained.
4. When Plaintiff stood up and attempted to walk away, he was doing so to comply with the officer's initial directive to leave the area.
5. Officer Zanichelli escalated the encounter by declaring a "compelled stop" without reasonable suspicion or probable cause to detain Plaintiff.
6. Plaintiff repeatedly told the officer not to touch him and attempted to maintain distance, raising his hands visibly and backing away to avoid physical confrontation.
7. Despite Plaintiff's non-threatening behavior, Officer Zanichelli placed his hands on Plaintiff, followed him around his vehicle, and physically restrained him without legal justification.
8. Officer Zanichelli grabbed Plaintiff's arm, forced him against his vehicle, and handcuffed him using unnecessary and excessive force under the circumstances.
9. Plaintiff did not resist arrest in a violent or aggressive manner; any movement was defensive and reactive to the officer's escalating physical contact.
10. Plaintiff was told he was "not under arrest" but was nevertheless handcuffed, detained, and prevented from leaving, constituting an unlawful seizure.
11. Plaintiff was placed in the back of a patrol vehicle while wearing a COVID-19 mask and left without air conditioning in the August heat, despite repeatedly stating he could not breathe.
12. Officers ignored Plaintiff's distress until another officer eventually opened the door, at which point Plaintiff fell out of the vehicle due to heat and breathing difficulty.
13. Plaintiff's detention, handcuffing, and physical handling were not justified by any legitimate law-enforcement need and were undertaken in violation of the Fourth Amendment.
14. The force used by Officer Zanichelli, including grabbing, pinning, and handcuffing Plaintiff, constituted excessive force under New Jersey law.
15. No reasonable officer in the same circumstances would have believed that Plaintiff posed a threat, was committing a crime, or was resisting in a manner that justified the force used.
16. Defendants' expert, Dr. Richard Celeste opinion is fatally flawed, as he ignored or misapplied facts and circumstances surrounding Officer Zanichelli's excessive use of force

4

opining that the actions of Zanichelli and CCPD complied with recognized police standards and training

B. Plaintiff intends to prove the following contested facts with regard to damages:

1. As a direct result of the unlawful seizure and excessive force, Plaintiff suffered physical injuries to his shoulder, arm, and back.
2. Plaintiff sought medical treatment on multiple occasions following the incident and underwent physical therapy through December 2022.
3. Plaintiff discontinued physical therapy due to financial hardship, not because he had fully recovered.
4. Plaintiff continues to experience pain, limited range of motion, and physical discomfort attributable to the force used during the incident.
5. Plaintiff suffered emotional distress, including fear of law enforcement, anxiety, and distrust of police, which caused him to avoid filing an Internal Affairs complaint until he obtained counsel.
6. Plaintiff experienced significant distress during the transport to central booking, including difficulty breathing and fear for his safety.
7. Plaintiff incurred out-of-pocket expenses, including $750 paid to a municipal court attorney to defend against charges arising from the incident.
8. Plaintiff suffered humiliation, embarrassment, and mental anguish as a result of being handcuffed, detained, and treated as a criminal without justification.
9. Plaintiff's injuries and emotional distress continue to affect his daily life, physical functioning, and sense of safety.

## PART IV.    **EACH DEFENDANT'S CONTESTED FACTS**

A.    Defendant Zanichelli intends to prove the following contested facts with regard to liability:

1. This matter involves a pedestrian stop that occurred on August 20, 2020 beginning at approximately 11:00 P.M., at the Camden Waterfront Park, a public park facility in Camden, New Jersey.
2. The City of Camden's municipal code provides "No person shall be permitted upon the lands and premises of any park or park property located in the City of Camden from the hours of 9:00 p.m. to 7:00 a.m."
3. Officers assigned to the Camden Waterfront routinely clear out the public parks after dusk every day. An individual who remains in the park after hours would be in violation of a municipal ordinance and subject to a municipal summons.
4. Plaintiff Steven Carmichael was in the same park on August 19, 2020 (the night prior to the night of this incident) where he was approached by CCPD clearing the park.

5. Carmichael understood the police officer's directive on August 19, 2020, that the park needed to be cleared due to the park being closed from "dusk to dawn."

6. On August 19, 2020 he told the police officer to tell the Chief and/or the officer's supervisors to "go F*** themselves."

7. Carmichael complied with the officer's orders on August 19, 2020, and left the park that night.

8. On the night of August 20, 2020, Zanichelli was on patrol and attempting to clear the Camden Waterfront Park area according to CCPD directives.

9. Carmichael heard Zanichelli use his PA system on his patrol vehicle but did not comply with Zanichelli's orders to leave the park.

10. After using his PA system along with lights and sirens multiple times, Zanichelli observed Carmichael place his chair directly in front of his patrol vehicle and refuse to leave the park.

11. At this point, Zanichelli exited his vehicle and activated his Body-Worn Camera ("BWC").

12. The events leading to the stop and arrest of Carmichael were captured by Officer Zanichelli's BWC.

13. Carmichael was not cooperative during the encounter and refused to leave the premises.

14. After his continuing refusals, Zanichelli attempted to place Carmichael under arrest.

15. Carmichael refused to comply with multiple commands and walked away from Zanichelli. Plaintiff continued to back away from Zanichelli. When Zanichelli grabbed Plaintiff's arm, Plaintiff struggled to get away from Zanichelli.

16. Zanichelli used reasonable force to effectuate the handcuffing through a compliance hold.

17. After Carmichael was arrested, he was placed into a police vehicle for booking.

18. Carmichael was charged with a disorderly persons offense of resisting arrest, eluding officer (2C:29-2(a)(1)), as well as cited for violation of the City's park municipal ordinance.

19. In Municipal Court on December 28, 2020, Carmichael pled guilty to a reduced violation of municipal ordinance of improper behavior, (City of Camden Ordinance 573-8) wherein Carmichael admitted to engaging in improper behavior on August 20, 2020, and was ordered to pay a fine and court costs.

20. Dr. Richard Celeste, a recognized expert in the field of police practices, conducted a thorough review of this matter and rendered a detailed report, opining that the actions of Zanichelli and CCPD complied with recognized police standards and training.

B.    Defendant Zanichelli intends to prove the following contested facts with regard to damages:

1. Defendant did not engage in any improper or unconstitutional action which was a proximate cause of damages.

2. Plaintiff did not suffer damages as a result of any unlawful conduct of Zanichelli.

**PART V.    WITNESS and SUMMARY OF TESTIMONY**

**A.  Plaintiff's Witnesses and Summary of Their Testimony**

1. Plaintiff intends to call the following witnesses with regard to liability and anticipates they will testify as follows:

1. **STEVEN CARMICHAEL**
   c/o Frank R. Schirripa, Esq.
   Hach Rose Schirripa & Rehns, LLP
   112 Madison Avenue, 10th Floor
   New York, New York 10016
   T: 646-992-8128
   ***Plaintiff.*** *Will testify regarding the events of August 19–20, 2020, his interactions with Officer Zanichelli, the force used, his detention, breathing distress, injuries, medical treatment, emotional distress, and damages.*

2. **OFFICER JESSE ZANICHELLI**
   c/o William F. Cook, Esq.
   Brown & Connery, LLP
   360 Haddon Avenue
   Westmont, NJ 08108
   *Adverse witness. Will testify regarding his actions on August 20, 2020, his decision to initiate a "compelled stop," physical contact with Plaintiff, force used, observations, and the citation issued.*

3. **OFFICER PETER NGUYEN**
   Camden County Police Department
   800 Federal Street
   Camden, NJ 08103
   (856) 757-7400
   *Adverse witness. Will testify regarding his arrival, observations, proximity to the use of force and his body-worn camera footage.*

4. **SERGEANT TROCCHIO**
   Camden County Police Department
   800 Federal Street
   Camden, NJ 08103
   (856) 757-7400
   *Is expected to testify regarding his Use of Force Administrative Review, findings, conclusions, and the determination that additional training was required.*

5. **DETECTIVE SCOTT BAGBY**
   Camden County Police Department
   Internal Affairs
   800 Federal Street

Camden, NJ 08103

(856) 757-7400

*Is expected to testify regarding the Internal Affairs review, including the conclusion that "Officer Zanichelli should have allowed the male to leave the park," and the recommendation for additional training.*

6. **LIEUTENANT ANGEL NIEVES**
Camden County Police Department
800 Federal Street
Camden, NJ 08103
(856) 757-7400
*Is expected to testify regarding the Use of Force Command Review, including findings that Officer Zanichelli "was not clear on what infractions he should be engaging people for" and "should have considered letting the male walk away."*

2. Plaintiff intends to call the following witnesses with regard to damages and anticipates they will testify as follows:

7. **JENNIFER PALLADINO, CNP**
Virtua Voorhees Hospital
303 Lippincott Drive, 4th Floor
Marlton, NJ 08053
(888) 847-8823
*Will testify regarding Plaintiff's medical evaluation, treatment, and injuries.*

8. **VIRTUA PHYSICAL THERAPY & REHABILITATION - Treating Provider**
1000 Atlantic Avenue
Camden, NJ 08104
(856) 246-3645
*Will testify regarding Plaintiff's physical therapy, functional limitations, progress, and ongoing symptoms.*

9. **CHRISTOPHER CHONG, M.D.**
Virtua Medical Group
325 Route 70 East
Cherry Hill, NJ 08034
(609) 267-9400
*Will testify regarding Plaintiff's injuries, diagnostic findings, treatment, and prognosis.*

10. **ADAM JONATHAN BEEN, D.C.**
Atlas Chiropractic LLC
1 Market Street, Suite 1C
Camden, NJ 08102
(856) 338-9125

8

Will testify regarding Plaintiff's musculoskeletal injuries, treatment, and ongoing limitations.

**11. COOPER UNIVERSITY HOSPITAL – Treating Provider**
1 Cooper Plaza
Camden, NJ 08103
(856) 342-2000
*Will testify regarding emergency or follow-up care, diagnostic imaging, and treatment related to the incident.*

**B. Defendant's Objections to Plaintiff's Witnesses:**

See Motion in Limine Section below.

**C. Defendant's Witnesses and Summary of Their Testimony:**

<u>See</u> Appendix of Defendant's Witness List.

**D. Plaintiff's Objections to Defendant's Witnesses:**

Plaintiff objects to current or former members of the Camden County Police Department who arrived at the scene *after* Plaintiff's arrest providing any testimony about their observations at the scene of the incident.

**PART VI.    EXPERT WITNESSES**

**1. Plaintiff's expert witnesses are:**

**THOMAS J. TIDERINGTON**
Thomas J. Tiderington & Associates, LLC
10844 Millwood Drive
Plymouth, MI 48170
(734) 231-2305

*Mr. Tiderington is expected to testify as an expert in police practices, use of force, law enforcement training, supervision, and administrative review. He will offer opinions to a reasonable degree of professional certainty regarding the officers' escalation of the encounter, the failure to employ de-escalation principles, the deviation from nationally accepted police practices, the improper decision to physically engage Plaintiff, and the unreasonableness of the force used. His testimony will be based on his July 7, 2024, expert report, his review of the body-worn camera footage, departmental policies, Internal Affairs findings, and his 44 years of law enforcement experience. His curriculum vitae, list of prior testimony, and Rule 26(a)(2) disclosures have been provided to Defendants and are attached herein.*

**2. Defendant's objection to the qualifications of plaintiff's expert witnesses are:**

9

Defendant does not object to Tiderington's qualifications, but reserves the right to object to Tiderington's opinion as a net opinion under <u>Daubert</u>.

3. **Defendant's expert witnesses are:**

**Dr. Richard Celeste**
4 Roberson Lane
Frenchtown, New Jersey 08825
Dr. Richard Celeste will testify that the arrest of Plaintiff was lawful and consistent with generally accepted policies, practices, training and legal mandates.

Dr. Celeste's CV is attached to this Order.

4. **Plaintiff's objections to the qualifications of plaintiff's expert witnesses are:**

Plaintiff does not object to Celeste's qualifications, but reserves the right to object Celeste's opinion as a net opinion under <u>Daubert</u>.

**PART VII.    EXHIBITS**

**A. Joint Exhibits**

**The parties intend to introduce the following exhibits into evidence:**

**See attached Joint Exhibit List**

**B. Plaintiff's Exhibits**

**1.   Plaintiff intends to introduce the following exhibits into evidence:**

**See attached Plaintiff's Exhibit List**

**2.   Defendant objects to the introduction of plaintiff's exhibit:**

**See objections on Plaintiff's Exhibit List.**

**C. Defendants' Exhibits**

**1.   Defendants intend to introduce the following exhibits into evidence:**

**See attached Defendants' Exhibit List.**

**2.   Plaintiff objects to the introduction of defendant's exhibit:**

**See objections on Defendants' Exhibit List**

**PART VIII.   LAW**

**A. Plaintiff**

Plaintiff's statement of the legal issues in this case:

**1.   Excessive Force (42 U.S.C. § 1983 / Fourth Amendment / NJCRA)**
Whether Officer Jesse Zanichelli used objectively unreasonable force during his encounter with Plaintiff on August 20, 2020. This determination will require consideration of the circumstances confronting the officer, including the nature of the underlying offense, whether Plaintiff posed an immediate threat to the safety of the officers or others, and whether Plaintiff was resisting or attempting to evade detention. The same analysis governs Plaintiff's parallel claim under the New Jersey Civil Rights Act.

**2.   Causation and Damages**
Whether Plaintiff suffered physical injury, emotional distress, economic loss, or other compensable harm as a direct and proximate result of Defendants' conduct. The jury must also determine the nature and extent of any damages proven at trial.

3. **Comparative Fault and Mitigation**

If raised by Defendants, the jury may be required to determine whether Plaintiff failed to mitigate his damages or engaged in conduct that Defendants contend contributed to the injuries he claims to have suffered.

4. **Evidentiary and Admissibility Issues**

The Plaintiff anticipates that the Court may be required to resolve disputes concerning the admissibility of body-worn camera footage, Internal Affairs and Use of Force reviews, expert testimony, medical records, and the use of deposition testimony for impeachment or substantive purposes. These issues may be addressed through motions in limine or at trial.

B. **Defendant**

    1. **Excessive Force/Section 1983/NJCRA.**

      Section 1983 does not create substantive rights; it merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws. See Graham v. Connor, 490 U.S. 386, 393-394 (1989); Ewing v. Cumberland Cty., 152 F. Supp. 3d 269, 289 (D.N.J. 2015); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

      In determining whether excessive force was used in effecting an arrest, the Fourth Amendment's "objective reasonableness" test is applied.  Sharrar v. Felsing, 128 F.3d 810, 820–21 (3d Cir. 1997) (citing Graham, 490 U.S. at 396).  The use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.  "Excessive force claims ... are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred."  Saucier, 533 U.S. at 207.  "That inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim."  Cty. of Los Angeles, Calif. v. Mendez, 137 S. Ct. 1539, 1547, 198 L. Ed. 2d 52 (2017).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham, 490 U.S. at 396-97 (internal quotations and citations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Id.

    2. **Qualified Immunity.**

      "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012).  To determine whether a government official is entitled to qualified immunity, two questions are asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged

misconduct?  Pearson v. Callahan, 555 U.S. 223, 236 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

## PART IX.            MISCELLANEOUS

### A. Days of Trial

It is estimated that this action will take approximately five (5) days to try, exclusive of jury selection time. The Plaintiff expects to call 4-5 witnesses. Defendant expects to call approximately 4-5 witnesses.

### B. Motions in Limine

a.  Plaintiff intends to file the following pretrial motions:
  i.  a motion in limine to limit reference to the fact that there were claims dismissed through Defendants' summary judgment motion;
  ii.  a motion in limine to bar the testimony of current or former members of the CCPD who arrived at the scene after Plaintiff's arrest; and
  iii.  Plaintiff will file a Motion in Limine to bar Defendant's expert witness, Dr. Richard Celeste on the basis  that his opinion is a net opinion.

b.  Defendant intends to file the following motions in limine:

  i.  Defendant objects to medical personnel providing any testimony beyond what is identified in treatment records.  There are no medical experts or associated expert reports relating to prognosis, future impairment, or causation.
  ii.  Defendant will file a Motion in Limine to bar Plaintiff's Police Expert Thomas Tiderington on the basis that his opinion is a net opinion.
  iii.  Defendant will file a Motion in Limine to preclude evidence, testimony, or argument related to Defendant Zanichelli's cessation of employment with Camden County Police Department, or Defendant Zanichelli's current employment.
  iv.  Defendant will file a Motion in Limine to preclude evidence, testimony, or argument related to Plaintiff's allegations, actions, and claims for damages regarding when he was in custody/transport to CCPD headquarters.
  v.  Defendant will file a Motion in Limine to preclude evidence, testimony, or argument related to Sgt. Nieves' deposition testimony regarding alternative solutions to the altercation as irrelevant and speculation.
  vi.  Defendant will file a Motion in Limine to preclude evidence, testimony, or argument related to performance notices issued to Officers Kohr and Nguyen for unrelated issues during this matter.

13

C. **Stipulations**

    a. The parties hereby stipulate and agree to the authenticity of all CCPD records, including body-worn camera footage, Internal Affairs records[1], Use of Force reports and departmental policies, and mutually agree that records custodians will not be required.

    b. The parties further stipulate and agree to the authenticity of all medical records, imaging, physical therapy notes, and billing records from the Plaintiffs' following medical providers: Virtua Voorhees, Virtua PT, Virtua Medical Group, Atlas Chiropractic, Cooper University Hospital.

    c. The parties stipulate to the admission of the BWC footage.

D. **Miscellaneous**

The parties anticipate that certain evidentiary and procedural issues may arise at trial that are not fully resolved at this stage. These issues include the potential use of deposition testimony for impeachment or as permitted under the Federal Rules of Evidence, including Rules 106, 613, and 801(d)(2).

The parties may seek rulings regarding the admissibility of medical records and expert testimony, including any objections under Rules 401, 403, 702, or 703.

The parties reserve the right to raise additional evidentiary or procedural matters that may arise as the trial date approaches, including issues related to witness sequestration, the order of proof, and any stipulations that may be reached prior to trial.

The parties will submit any motions *in limine* in accordance with Judge Williams' Individual Rules and Procedures, at least three weeks before the start of trial, and any responsive papers shall be submitted at least two weeks before the start of trial.

**PART X.**     **NON-JURY TRIALS**

Not applicable. This matter will be tried before a jury.

**PART XI.**     **JURY TRIALS**

1. Pre trial briefs or proposed findings of fact and conclusions of law shall only be filed at the direction of the Court..

---

[1] This excludes individual documents that are part of any IA file that was generated by a party other than CCPD. Defendant will stipulate that such document is part of the file, but not as to its individual authenticity.

2.   The parties must confer with each other prior to trial and submit joint requests to charge two weeks before trial in hard copy form and via email (njdnef_Williams@njd.uscourts.gov) in Word format. Any additional proposed charges that could not be agreed upon should be submitted by the propounding party to the Court at the same time. Counsel are to delineate in their submissions charges they wish to be given before trial, including a joint preliminary statement of the case, and charges they wish to be given at the close of trial. Counsel shall cite to the applicable authority for each proposed charge if the charge differs from the Third Circuit Model Charge. Supplemental requests to charge that could not have been anticipated may be submitted any time prior to the arguments to the jury. All requests for charge shall be on a separate page or pages, plainly marked with the name and number of the case; shall contain citations of supporting authorities; shall designate the party submitting same; and shall be numbered in sequence.

3.    The parties shall confer with each other prior to trial and submit a joint jury questionnaire three weeks before trial in hard copy form and via email (njdnef_Williams@njd.uscourts.gov). Any additional proposed questions that could not be agreed upon shall be submitted by the propounding party to the Court at the same time.

4.   Verdict Sheet:  The parties must confer with each other prior to trial and submit a joint verdict sheet two weeks before trial in hard copy form and via email (njdnef_Williams@njd.uscourts.gov) in Word format. If counsel cannot agree on a joint verdict sheet, counsel shall separately submit proposed verdict sheets in the same manner.

**EACH OF THESE ITEMS IS TO BE FILED PRIOR TO THE FIRST TRIAL DATE EVEN IF THE CASE IS CONTINUED.**

**COUNSEL ARE ON NOTICE THAT FAILURE TO PROVIDE TIMELY COMPLIANCE WITH THE REQUESTS OF PART X AND XI MAY RESULT IN THE POSTPONEMENT OF TRIAL AND THE ASSESSMENT OF JUROR AND OTHER COSTS AND/OR THE IMPOSITION OF SANCTION.**

**CONCLUDING CERTIFICATION**

We hereby certify by the affixing of our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Attorney for Plaintiffs:

*/s/          Frank R. Schirripa*
Frank R. Schirripa
SBN: 032382002
HACH ROSE SCHIRRIPA & REHNS, LLP

112 Madison Avenue, 10th Floor
New York, New York 10016
T: 646-992-8128
*Attorney for Plaintiff*

Attorney for Defendant:

/s/      *William F. Cook*
William F. Cook, Esquire
Joseph D. Clifford, Esquire
**BROWN & CONNERY, LLP**
360 North Haddon Avenue
Westmont, New Jersey 08108
*Attorney for Defendant*


   Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this <u>28th</u> day of

<u>July</u>,  2026.


                ELIZABETH A. PASCAL
                UNITED STATES MAGISTRATE JUDGE
                United States District Court
                District of New Jersey

**APPENDIX**

**STEVEN CARMICHAEL v. CAMDEN COUNTY POLICE DEPARTMENT, ET AL.**
**D.N.J. DOCKET NO. 1:22-cv-05019-KMW-EAP**
**JOINT FINAL PRETRIAL ORDER**
**JOINT EXHIBIT LIST**

| JX- | Description | Reference | Objection | ID | EV |
|---|---|---|---|---|---|
| 1. | Body-Worn Camera Video – Officer Jesse Zanichelli (08/20/2020) | SJ Ex. D-11 | | | |
| 2. | Body-Worn Camera Video – Officer Peter Nguyen (08/20/2020) | SJ Ex. D-13 | | | |
| 3. | CCPD Use of Force Report (UFR) Prepared by Officer Jesse Zanichelli | SJ Ex. D-14; CC 000033 | | | |
| 4. | CCPD Incident/Offense Report Prepared by Officer Jesse Zanichelli (August 20, 2020) | SJ Ex. D-2; CC 000027–000030 | | | |
| 5. | Deposition Transcript of Plaintiff Steven Carmichael (Taken November 28, 2023) | SJ Ex. D-9 | | | |
| 6. | Deposition Transcript of Officer Jesse Zanichelli (Taken April 22, 2024, and May 7, 2024) | SJ Ex. D-10; SJ Ex. D-12 | | | |
| 7. | Municipal Court Summons Issued to Plaintiff (August 20, 2020) | SJ Ex. D-20; CC 000026 | | | |
| 8. | Municipal Court Disposition Records and Guilty Plea Transcript (December 28, 2020) | SJ Ex. D-21 | | | |

**APPENDIX**

**STEVEN CARMICHAEL v. CAMDEN COUNTY POLICE DEPARTMENT, ET AL.**
**D.N.J. DOCKET NO. 1:22-cv-05019-KMW-EAP**
**JOINT FINAL PRETRIAL ORDER**
**PLAINTIFF'S EXHIBIT LIST**

| P- | Description | Reference | Objection | ID | EV |
|---|---|---|---|---|---|
| 1. | Body-Worn Camera Video – Officer Kohr (8/20/2020) | | | | |
| 2. | Body-Worn Camera Video – Officer Pomeroy (8/20/2020) | | | | |
| 3. | Training Memorandum / Additional Training for Officer Zanichelli | CC001119 | Relevance | | |
| 4. | CAD / Dispatch Records | CC000012-000017 | | | |
| 5. | Diagnostic Imaging (X-ray, MRI, CT) (09/15/2020) | | Hearsay, relevance | | |
| 6. | Photographs of Plaintiff's Injuries | | | | |
| 7. | Photographs of the Camden Waterfront Park Area | | Relevance | | |
| 8. | Expert Report of Thomas J. Tiderington (July 7, 2024) | | Daubert | | |
| 9. | Expert CV, Testimony List, and Fee Schedule | | Daubert | | |
| 10. | Internal Affairs Investigative Report Prepared by Detective Scott Bagby | SJ Ex. D-16; CC 000001 | Relevance | | |
| 11. | Use of Force Administrative Review Completed by Sergeant Louis Trocchio | SJ Ex. D-15; CC 000002 | Relevance | | |
| 12. | Use of Force Command Review Completed by Lieutenant Angel Nieves | CC 000003–000004 | Relevance | | |
| 13. | Deposition Transcript of Detective Scott Bagby (Taken April 24, 2024) | SJ Ex. D-8 | Hearsay, relevance | | |
| 14. | Deposition Transcript of Officer Thomas Kohr (Taken April 19, 2024) | SJ Ex. D-5 | Hearsay, relevance | | |
| 15. | Deposition Transcript of Sergeant Louis Trocchio (Taken April 6, 2024) | SJ Ex. D-7 | Hearsay, relevance | | |

**APPENDIX**

**STEVEN CARMICHAEL v. CAMDEN COUNTY POLICE DEPARTMENT, ET AL.**
**D.N.J. DOCKET NO. 1:22-cv-05019-KMW-EAP**
**JOINT FINAL PRETRIAL ORDER**
**PLAINTIFF'S EXHIBIT LIST**

| P- | Description | Reference | Objection | ID | EV |
|---|---|---|---|---|---|
| 16. | Deposition Transcript of Lieutenant Angel Nieves (Taken April 19, 2024) | SJ Ex. D-6 | Hearsay, relevance | | |
| 17. | Virtua Voorhees Hospital Medical Records for Plaintiff (Set 1) | Carmichael-1 | Hearsay | | |
| 18. | Virtua Voorhees Hospital Medical Records for Plaintiff (Set 2) | Carmichael-2 | Hearsay | | |
| 19. | Virtua Medical Group Records of Dr. Chong for Plaintiff | Carmichael-3 | Hearsay | | |
| 20. | Atlas Chiropractic Treatment Records of Dr. Been for Plaintiff | Carmichael-4 | Hearsay | | |
| 21. | Cooper University Hospital Medical Records for Plaintiff | Carmichael-5 | Hearsay | | |

# APPENDIX

**STEVEN CARMICHAEL v. CAMDEN COUNTY POLICE DEPARTMENT, ET AL.**
**D.N.J. DOCKET NO. 1:22-cv-05019-KMW-EAP**
**JOINT FINAL PRETRIAL ORDER**
**DEFENDANT'S EXHIBIT LIST**

| D- | Description | Reference | Objection | ID | EV |
|---|---|---|---|---|---|
| 1. | Zanichelli Arrest Report, August 20, 2020 | CC 000009-00011 | | | |
| 2. | Kohr Aditional Information Report, August 20, 2020 | SJ Ex. D-4 (Improperly Identified as authored by Officer Nguyen); CC 000005-000006 | Hearsay, Relevance | | |
| 3. | Complaint and Summons for Resisting Arrest, August 21, 2020 | SJ Ex. D-19; CC 000018-000024 | | | |
| 4. | Plaintiff's Amended Complaint, October 5, 2022 | SJ Ex. D-2 | | | |
| 5. | Plaintiff's Responses to Interrogatories, November 7, 2023 | | | | |
| 6. | Defendants' Answers and Affirmative Defenses, October 20, 2022 | | | | |
| 7. | Plaintiff's Responses to Requests for Admission | | | | |
| 8. | Zanichelli's Responses to Interrogatories, September 21, 2023 | SJ Ex. D-22 | | | |
| 9. | Chief Rodriguez's Responses to Interrogatories, October 6, 2023 | SJ Ex. D-23 | Hearsay, Relevance | | |
| 10. | Expert Report of Dr. Richard Celeste, July 22, 2024 | SJ Ex. D-24 | Daubert | | |
| 11. | CV of Dr. Celeste | | Daubert | | |
| 12. | Additional Officers' BWC Footage | February 10, 2023 Production | | | |
| 13. | Medical Records of Dr. Palladino | Carmichael-1 | | | |

**APPENDIX**


**STEVEN CARMICHAEL v. CAMDEN COUNTY POLICE DEPARTMENT, ET AL.**
**D.N.J. DOCKET NO. 1:22-cv-05019-KMW-EAP**
**JOINT FINAL PRETRIAL ORDER**
**DEFENDANT'S EXHIBIT LIST**

| D- | Description | Reference | Objection | ID | EV |
|---|---|---|---|---|---|
| 14. | Medical Records of Dr. Palladino | Carmichael-2 | | | |
| 15. | Medical Records of Dr. Palladino | Carmichael-3 | | | |
| 16. | Medical Records of Dr. Palladino | Carmichael-4 | | | |
| 17. | Medical Records of Dr. Palladino | Carmichael-5 | | | |
| 18. | Internal Affairs Investigative Report Prepared by Detective Scott Bagby | SJ Ex. D-16; CC 000001 | | | |
| 19. | Use of Force Administrative Review Completed by Sergeant Louis Trocchio | SJ Ex. D-15; CC 000002 | | | |
| 20. | Use of Force Command Review Completed by Lieutenant Angel Nieves | CC 000003–000004 | | | |
| 21. | Deposition Transcript of Detective Scott Bagby (Taken April 24, 2024) | SJ Ex. D-8 | | | |
| 22. | Deposition Transcript of Officer Thomas Kohr (Taken April 19, 2024) | SJ Ex. D-5 | | | |
| 23. | Deposition Transcript of Sergeant Louis Trocchio (Taken April 6, 2024) | SJ Ex. D-7 | | | |
| 24. | Deposition Transcript of Lieutenant Angel Nieves (Taken April 19, 2024) | SJ Ex. D-6 | | | |

# EXPERT CVs



# Thomas J. Tiderington
## Chief of Police

(Retired 2022)

Law Enforcement Training / Case Consultant / Expert Witness

Fort Lauderdale, Florida / Detroit, Michigan

ttiderington@aol.com  -  734 231-2305

**EXPERIENCE OVERVIEW:**

- Chief of Police with over forty-four years of experience with four law enforcement agencies.   Responsible for personnel, budgeting, crime reduction, internal affairs, investigations, policies, training, and overall department leadership.
- Police Training Instructor and Adjunct College Instructor-Criminal Justice Courses.
- Commissioner – Michigan's Human Trafficking Commission 2015 – 2019.
- Graduate of the Southern Police Institute (SPI).
- Bachelor's Degree in Police Administration.
- Police practices and procedures expert witness.
- Case Consultant (civil and criminal).

**Chief Thomas J. Tiderington** is an expert witness and consultant in police policies and practices, criminal investigations, use of force, search warrants, and arrest procedures. He has helped attorneys secure over 100 million dollars in settlements and judgements and has likewise defended the actions of law enforcement officers and federal agents. As a police officer for over 44 years with four different police agencies, he has extensive practical experience as a street cop, and detective, and served as police chief for over twenty years, he has consulted on over 100 cases in state and federal courts.

Throughout his law enforcement career, he has been a highly sought-after police instructor and lecturer training tens of thousands of state, local, and federal law enforcement agencies, both nationally and internationally, on a variety of topics including (but not limited to) criminal investigations, human trafficking, use of force, international drug investigations, money laundering, undercover operations, and police-involved shootings.   He is knowledgeable in all aspects of law enforcement operations, including policing best practices, policy, procedures, use

of force, risk mitigation, police training, and defensive tactics, including the use of K9s and CEWs (TASER).

During his forty-four-year law enforcement career he served eight years as an undercover agent assigned to the department's Organized Crime Division where he was an undercover operative in hundreds of cases.  As an undercover agent, he infiltrated and investigated Colombia-based, international cocaine smuggling cartels. One investigation resulted in the seizure of over 3000 kilograms of cocaine and the arrest and conviction of notorious drug smuggler George Jung. This extensive undercover operation formed the basis for the book and major motion picture, **"BLOW"**.

For over five years he was assigned to the United States Drug Enforcement Administration (DEA) as the Group Supervisor-in-Charge of the South Florida Regional Drug Task Force. Under his leadership, the "Task Force" conducted one of the most sophisticated and successful international money laundering investigations (Operation Princess) to date.  This operation resulted in the seizure of more than 100 million dollars in cash worldwide and over 5 tons of cocaine. Chief Tiderington is prominently featured in a second book, authored by New York Times bestselling writer Bruce Porter, which details this global investigation and the abduction of his informant in Colombia, South America. The true story titled **"SNATCHED"** was published by St. Martin's Press in April of 2016, and the book has been optioned by Leonardo DiCaprio's movie production company, Appian Way.

Before retiring in 2022, he served as Chief of Police for over 20 years and is one of the longest-serving police chiefs in the United States.   Chief Tiderington is extremely knowledgeable in all aspects of law enforcement operations, including policing best practices, policy, procedures, use of force, risk mitigation, accreditation, police liability, active shooters in schools, police training, investigations, and emergency management planning to name a few.    As Police Chief his duties included the overall operation and management of the Plymouth Township Police Department and the multi-agency Plymouth Communications Center and Prisoner Lock-Up Facility (PCC).

Thomas J. Tiderington & Associates, LLC          734 231-2305          ttiderington@aol.com

**For over 35 years Chief Tiderington served as a law enforcement trainer:**

| Partial Listing of Training Classes Taught: | |
|---|---|
| • Undercover Survival/Raids/Informants-developed and presented training since 1987- over 10,000 state, local & federal officers have attended this training. | • Instructor- DEA-State & Local Training Programs – (Throughout the US since 1987). |
| • Lead Instructor – Nevada HIDTA Training – Undercover Operations/Informants/Raids. | • Schoolcraft College – Criminal Justice / Adjunct Instructor (since 2005). |
| • Keynote Speaker - Entrepreneurs' Organization – Detroit Chapter (2011) | • United States Coast Guard – Criminal Investigations (Miami/Key West, Florida) |
| • Young Presidents Organization (YPO) - Barcelona, Spain – Guest Speaker (2010) | • Michigan State Police – Criminal Investigations - Lead Instructor, Drug Unit Commanders School, Detroit, MI. |
| • Michigan State Police – Undercover Survival Training – Houghton Lake, MI. | • National Alliance of State Drug Enforcement Agencies (NASDEA), Mackinaw Island- Lead Instructor. |
| • Strategic Vice Investigations – Lead Instructor | • Broward Intelligence Group, Money Laundering Investigations, Key West, Florida. |
| • International Money Laundering Investigations Conference – Presenter on behalf of the Department of Justice (DOJ) - Rome, Italy. | • Florida Department of Law Enforcement, Money Laundering Investigations. |
| • NARC RAIDS – Developed and presented training since 1990-over 10,000 officers have attended. | • Narcotics Instructor. Broward Criminal Justice Institute (since 1985). |
| • Narcotics Instructor, Investigators Drug School (since 1985) | • Gwinnett, Georgia – Undercover Survival & Police Raids |
| • International Narcotics Enforcement – Speaker – Madrid, Spain (1992). | • Director and lead instructor, Drug Enforcement Seminars, Ft. Lauderdale, FL (since 1984) |
| • Drug Interdiction Instructor, United States Coast Guard, Tactical Law Enforcement Team (smuggling investigations). | • Minnesota State Association of Narcotics Investigators (M.S.A.N.I.) - Undercover Survival |
| • Indiana Drug Enforcement Association Annual Conference, (1998). | • Southeastern Public Safety Institute-St. Petersburg Junior College- Criminal Investigations. |

Thomas J. Tiderington & Associates, LLC          734 231-2305          ttiderington@aol.com

| | |
|---|---|
| • Tallahassee Police Department-In-Service Training- Informant Handling/ Raids | • International Association of Chiefs of Police (IACP)- Orlando, Florida - Use of Force. |
| • National Intelligence Academy, Coral Springs, FL | • Michigan State Police, Street Level Lieutenant's Conference – Undercover Operations / Raids/Search Warrants/Informants/VICE. |
| • Presenter Department of Defense (DOD)- United States Navy- USS Theodore Roosevelt, *While Underway* - Atlantic Ocean/International Waters | • In-Service Police Training Instructor, Rio Rancho Department of Public Safety, New Mexico. |
| • Charlotte-Mecklenburg Police Institute, Charlotte, NC (since 1997). | • Lead Presenter – Human Trafficking Investigations- Ft. Lauderdale, FL (2014). |
| • Michigan Association of Chiefs of Police – 2015 Winter Training Conference - Police Policy and Practices – Presenter. | • Undercover Survival & NARC Raid – Raleigh, NC. |
| • National Summit on Human Trafficking and the State Courts- New York City (2015). | • St. Louis County and Municipal Police Academy, St. Louis, MO- Police Raids/Undercover. |
| • Michigan Association of Chiefs of Police – Human Trafficking & Prostitution Investigations 2017 Summer Conference- Presenter | • Columbus Ohio Regional Police Academy – Undercover Survival & Narc Raids Training. |
| • Young Presidents Organization (YPO) - International Drug Trafficking (2019). | • Broward Crime Commission – Presenter (2020). |
| • Certified Law Enforcement Instructor (MCOLES & FDLE). | • Broward County Police Academy classes. |

## Areas of Instruction/Topics Provided by Thomas J. Tiderington:

(Partial List)

| | |
|---|---|
| Undercover Operations | Human Trafficking |
| Use and Management of Confidential Informants. | Prostitution Investigations-Hotel/Motel Investigations |
| High-Risk Warrant Service | "Sneak & Peek" Warrants" |
| Coercive Deception | Use of Hidden Cameras |

Thomas J. Tiderington & Associates, LLC        734 231-2305        ttiderington@aol.com

| | |
|---|---|
| Alternatives to Dynamic Entries. | International Cartels and Criminal Organizations * Fugitives and Arrest Warrants |
| Search Warrants/Warrantless Entries | Conspiracy Investigations |
| Dangers of using "boilerplate" affidavits | Money Laundering |
| Narcotics Investigations | High-Risk Police Tactics |
| Criminal Cartels | Use of Deadly Force |
| Wrong Door Raids | Developing Probable Cause |
| Controlled Drug Deliveries | Kidnapping Investigations |
| Drug Identification | SWAT- use and policies. |
| Drug Interdiction and Smuggling Operations | Medical Marijuana and the use of force |
| Task Force Operations | Risk and Threat Assessment |
| Use of Force Policy and Procedures | Police Ethics |
| Firearms Use and Policy | Vehicle Pursuit Procedures |
| Less than lethal options (CEW/TASER) | Mistaken Identity Shootings |
| Concepts of Evidence/rules of evidence | Traffic Stop and Procedures |
| Community Policing and Crime Statistics | Handcuffing policy and procedures |
| Threat Assessment & Risk Avoidance in Tactical Operations | Interview and Interrogation Techniques |
| SWAT Operations | Internal Investigations |

## Professional Law Enforcement Experience

**Chief of Police**
Plymouth Township Police Department (2001-2022)
Michigan

- A "seasoned" executive experienced in all aspects of police operations, policy development/implementation, labor relations, internal affairs, and community involvement.
- One of the longest-serving police chiefs in the country.

Thomas J. Tiderington & Associates, LLC          734 231-2305          ttiderington@aol.com

- Led the accreditation process.
- Effective leadership skills in personnel selection, training, and reorganizing staff into cohesive motivated teams.
- Introduced and managed community policing strategies to address strengthening police-community relations.

**Police Officer/Supervisor/Senior Management**
Fort Lauderdale Police Department (1981–2001)
Florida

- Broward Police Academy (comparative compliance program).
- Patrol Division – a highly diverse population of 250,000 residents and millions of visitors each year.  Assigned to all areas of the city in every patrol assignment.
- Organized Crime Bureau (OCB) – Detective charged with investigating international crime cartels.
- Supervisor and Management Positions – Served in a variety of progressively responsible leadership executive positions.
- Administrative Services Captain – Budget, Purchasing, CALEA Manager. Accreditation Management, Grants and Planning, Training.
- Patrol Captain – In charge of crime prevention initiatives as well as the delivery of police uniformed patrol services.
- Captain / Special Investigations Division – Management and oversight of over fifty detectives charged with conducting specialized investigations targeting criminal organizations.  Units included: VICE/Human Trafficking, Criminal Investigations, Narcotics, Task Force Operations, Technical Support, Nuisance Abatement Board, Street Crimes, and Major Narcotics.

**United States Drug Enforcement Administration (DEA)**
Southeast Florida Regional Task Force (1990-1996)

Group Supervisor in Charge of the South Florida Regional Task Force Initiative – HIDTA Task Force charged with the responsibility of identifying and dismantling international criminal cartels and organizations.   Supervised and managed one of the most sophisticated and successful worldwide money laundering investigations (Operation Princess).  Seizing more than 100 million dollars in cash and over 5 tons of cocaine.

**Detroit Police Department (1978 -1980):**
Diverse uniformed patrol and investigative assignments

- Detroit Police Academy.
- Patrol Experience
- Community Policing – Detroit Police Sub-Station Program.
- Motorcycle Training
- Pistol Team

*1980 – One of 1500 police officers was laid off due to budget reductions.*

## Education:

- Mercy College of Detroit – Criminal Justice/associate degree
- Florida Atlantic University – Police Administration/bachelor's degree
- University of Louisville/Southern Police Institute – Command Officers Development Course (CODC)
- Detroit Police Academy (Class 78K)
- In-Service Police Training - over 4800 hours of advanced police training and leadership classes.

## Secondary Teaching Experience:

- Broward Community College – Adjunct Faculty
- Schoolcraft College – Adjunct Faculty|

## Expert Witness and Consulting Experience:

Chief Tiderington has been retained as an expert witness or case consultant in over one hundred (100) cases throughout the United States. His considerable expertise involves meticulous case review, enabling him to deliver comprehensive reports and opinions to the Court. Furthermore, he possesses extensive knowledge and experience in providing testimony during depositions and trials in both state and federal courts.  He has been retained by the Department of Justice to examine and review the investigative actions of agents with the Federal Bureau of Investigation (FBI) and the US Marshall's Service.

Thomas J. Tiderington & Associates, LLC          734 231-2305          ttiderington@aol.com

<u>100 Million Dollar Jury Verdict</u> - Chief Tiderington has also participated in and reviewed cases that reflect misconduct on the part of law enforcement, as an example, in 2018, Jerry Blasingame, a 65-year-old man who was panhandling on the side of an Atlanta highway suffered a severe injury after being shot with a TASER by the Atlanta Police Department.  Chief Tiderington was retained by Plaintiff's counsel to evaluate and assess the actions and use of force by the Atlanta Police Officer.   His findings and opinions reflected that the officer's actions were a departure from acceptable police practices and standards.

> *"I sought Chief Tiderington's expertise and advice for the case. He meticulously investigated every aspect of the incident and produced a thorough report highlighting practices that deviated from established procedures. His insightful analysis and compelling testimony in court played a pivotal role in securing a $100 million settlement against both the police officer and the City of Atlanta."*
> Attorney Ven Johnson – Johnson Law

**Provides consulting and expert witness services on a wide range of law enforcement issues including, but not limited to:**

| | |
|---|---|
| Police Use of Force | Wrongful Convictions |
| Standard operating procedures, policies, and rules and regulations of police agencies. | Selection, retention, supervision, discipline, and training of law enforcement officers. |
| Internal Investigations | Police Administration |
| Police Procedures and Investigations | Pursuits (vehicle & foot) |
| Police Corruption | Human Trafficking/Prostitution |
| Criminal Investigations | Interviews and Interrogations |
| Police Arbitration Cases | Accidental Police Shootings/Mistaken Identity |
| Civil Rights Violations | Immigration Issues |
| Police recognition of and reaction to emotionally disturbed persons. | Workplace Violence and Harassment |
| 911 and Police Dispatch Operations | Homicide & Violent Crime Investigations |
| Police Response to an Active Shooter | Raid Planning and Execution |
| Adult Entertainment Establishments | "Wrong-Door" Raids & Search Warrants |
| Search Warrants & Affidavits | Use of Hidden Cameras & Surveillance |
| Use of Anticipatory Warrants | Controlled Delivery Investigations |
| Domestic and International Narcotics Trafficking and Enforcement. | Fugitives / Arrest Warrants (Domestic & Foreign) |
| Premises Liability (Human Trafficking) | Crime Prevention Techniques |
| Handcuffing Techniques | Police Use of K9s |
| Police Use of CEW's (TASER) | Use and Management of Informants |
| Police Shootings | Extradition Issues |

Thomas J. Tiderington & Associates, LLC          734 231-2305          ttiderington@aol.com

| International Investigations | Monell Claims |
|---|---|
|  |  |

## PRIVATE SECURITY EXPERIENCE

Provides guidance to commercial property owners and served as a security consultant for bars, hotels, and commercial business establishments. Offers advice and expertise in crime prevention strategies and employee training pertaining to security concerns, particularly addressing criminal activity on or near their properties.

## TRAINING COURSES ATTENDED

Received over 4,800 hours of specialized and professional training in nearly all areas of law enforcement including particular emphasis in criminal investigations, arrests, use of force, and policies and procedures.

## PROFESSIONAL ACTIVITIES:

**Human Trafficking Commissioner - Appointed by Michigan Governor Rick Snyder (2015 – 2019).**

The mission of the Human Trafficking Commission:

1. Designed to identify sources for grants that will assist in examining and countering human trafficking.
2. Fund research programs to determine the extent and nature of human trafficking in the state of Michigan, and provide information and training to police officers, prosecutors, court personnel, social services personnel, and other individuals.
3. Collect and analyze information regarding human trafficking in this state, identify state and local agencies within this state and other states, as well as, within the federal government, that are involved with issues relating to human trafficking.
4. Coordinate the dissemination of information regarding human trafficking in the state of Michigan to those agencies, review the existing services available to assist victims of human trafficking, including crime victim assistance, health care, and legal assistance, and establish a program to make those victims better aware of the services that are available to them.
5. Establish a program to improve public awareness of human trafficking review existing state laws and administrative rules relating to human trafficking and make recommendations to the legislature to improve those laws and rules to address human trafficking violations in this state.

Thomas J. Tiderington & Associates, LLC          734 231-2305          ttiderington@aol.com

**Western Wayne Criminal Investigations:  Board of Directors / Chairman**

A Multi-Agency Task Force consortium (Federal, State & Local Agencies) designed to provide the benefit of regional criminal investigative teams.  Includes the Western Wayne County Community Response Team (CRT).

**Western Wayne Special Operations Team (SWAT):**
Board of Directors / Chairman

**Professional Affiliations:**
(either current or at one time affiliated with)

Wayne County Police Chiefs Association
Western Wayne Chiefs Association
Southeast Michigan Chiefs of Police Association
Fraternal Order of Police/Florida
Police Executive Research Forum (PERF)
International Narcotics Enforcement Officers Association
State Certified Law Enforcement Instructor (Florida)
Southern Police Institute (SPI)-Alumnus
International Association of Chiefs of Police (IACP) – Life Member
National Drug Enforcement Officers Association (NDEA)
International Law Enforcement Educators and Trainers Association (ILEETA)
Michigan Association of Chiefs of Police (MACP)
Western Wayne Special Operation Team – Board of Director
National Tactical Officers Association (NTOA)
International Crime Scene Investigators Association (ICSIA)
Michigan Municipal Risk Management Authority (MMRMA)
Michigan's Human Trafficking Commission

Thomas J. Tiderington & Associates, LLC          734 231-2305          ttiderington@aol.com

## "EXHIBIT A"

CV OF DR. RICHARD CELESTE

Dr. Richard Celeste retired in 2002 after 26 years in Law Enforcement. He was the civilian Director of the Somerset County Police Academy for the next 20 years which was located at the Somerset County Public Safety Training Center in Hillsborough, New Jersey. Dr. Celeste retired at the rank of Deputy Chief. Dr. Celeste designed the former police academy and the Somerset County Firearms Range located in Hillsborough, New Jersey.

As the Academy Director he was responsible for the daily operation of the academy which generally administered two (2) 24-week Police Recruit Training Programs, and (2) 13-week Correction Officer Training Programs per year from 1989-2013. From 2013-2023 his mission for the academy was to develop and administer continuing education programs. Approximately 100 Advanced Law Enforcement Continuing Education Programs were administered annually under his command. Dr. Celeste also administered State Parole Officer Basic Training and County Detective Basic Training.

Dr. Celeste provided Use of Force training for approximately 2000 sworn officers on an annual basis during his years as Academy Director. In addition to training law enforcement officers, approximately 7000 citizens have received training through the academy in a variety of programs developed and administered by Dr. Celeste to include personal safety, threat management, and hands on self-defense.

Dr. Celeste's academic credentials include a Bachelor of Arts degree in American History, a Master of Arts degree in Education and a Doctorate degree in Adult Education with a Law Enforcement theme. He is also a graduate of the New Jersey State Police Academy for Municipal Officers. In addition, Dr. Richard Celeste holds certifications as a Use of Force Instructor, Community Policing Instructor, and Community Policing Officer. Dr. Richard Celeste has also received a certification in Less Lethal Use of Force through Penn State University. Dr. Celeste is also a Force Science Analyst through the Force Science Institute.

Dr. Celeste has been an adjunct professor at Seton Hall University, Center for Public Service, Graduate School Division. He instructed in Organizational Theory and Behavior and the Administration and Management of Criminal Justice Organizations. In addition, he also has instructed in the undergraduate division teaching such courses as Criminology, Criminological Theory, and Victimology. Dr.

Celeste has also developed and taught two courses, Leadership, Management, Supervision, a primer for professionals and Contemporary Policing Issues.

Dr. Celeste has also been an adjunct professor at Centenary College teaching Introduction to Criminal Justice and Juvenile Justice at the undergraduate level and Effective Management Practices at the graduate level. Dr. Celeste taught Introduction to Criminal Justice and previously instructed Introduction to Criminal Law at Raritan Valley Community College over a period of 15 years.

He has developed many Criminal Justice related programs to include; personal safety programs for women, female college students, and new drivers of motor vehicles.  He developed a "Skills of Life" Program, Juvenile Offender Leadership Training Course and a "Police Youth Week" Program.

His doctoral thesis addressed how to administer a comprehensive recruit training program and was the model for the Basic Training Program at the Somerset County Police Academy and has been requested for use by other New Jersey academies and outside of the State of New Jersey. Dr. Celeste has lectured at Rutgers, Seton Hall, and Rider University regarding the topics of Use of Force and training law enforcement officers. Dr. Celeste continued to provide mandatory instruction to officers in Somerset, Hunterdon, and Warren Counties during the Pandemic of 2020 through the use of web-based programming.

**CURRICULUM VITAE**

I. **PERSONAL**

    A.    Richard Celeste, Ed.D.
    B.    Resides in Frenchtown, New Jersey.

II. **EDUCATION**
    A.    Attended Edison Township Public School Systems, Edison, NJ.
    B.    Bachelor of Arts, American History, St. Francis College, Loretto, Pennsylvania. Graduated May, 1975.
    C.    Master of Arts, Education, Seton Hall University, South Orange, NJ. Graduated May, 1989.
    D.    Doctor of Education, Nova Southeastern University, Philadelphia Campus.
        Graduated December, 1996. Doctoral Dissertation Topic:
        "The Police Academy Administrators Handbook for Administering a

Comprehensive Police Recruit Training Program"

III.        **HIGHER EDUCATION TEACHING EXPERIENCE**

A.    Adjunct Professor, Seton Hall University Center for
Public Service, Graduate Division 1996-2000.
Courses Taught;
1.  Organizational Theory and Behavior.
2.  Criminal Justice Organizations; Administration and Management.

B.    Adjunct Professor, Seton Hall University,
Criminal Justice Department, Undergraduate Division,
January 1998 to 2003
Courses Taught;
1.  Criminological Theory
2.  Victimology
3.  Intro to Criminology
4.  Contemporary Policing Issues (developed by Dr. Celeste)
5.  Leadership/Management/Supervision (developed by Dr. Celeste)
6.  Spring 2011 / Introduction to Criminal Justice

C.    Adjunct Professor, Centenary College,
Sociology Department, Undergraduate Division,
June 1998
Courses Taught;
1.  Juvenile Justice
2.  Introduction to Criminal Justice

D.    Adjunct Professor, Centenary College,
Sociology Department, Graduate Division,
Fall 2006
Courses Taught;
1.  Effective Management Practices

E.    Adjunct Professor, Raritan Valley Community College
Courses Taught;
Fall 2005 / Criminal Law
Spring 2006 / Introduction to Criminal Justice
Fall 2006 / Introduction to Criminal Justice
Spring 2007 / Introduction to Criminal Justice
Fall 2007 / Introduction to Criminal Justice
Fall 2008 / Introduction to Criminal Justice
Spring 2009 / Introduction to Criminal Justice
Fall 2009 / Introduction to Criminal Justice

Spring 2010 / Introduction to Criminal Justice
Fall 2010 / Criminal Law
Fall 2010 / Introduction to Criminal Justice
Spring 2011 / Introduction to Criminal Justice
Fall 2011 / Criminal Law
Fall 2011 / Introduction to Criminal Justice
Spring 2012 / Introduction to Criminal Justice
Fall 2012 / Criminal Law
Fall 2012 / Introduction to Criminal Justice
Spring 2013/ Introduction to Criminal Justice
Fall 2013/ Introduction to Criminal Justice
Fall 2013 / Criminal Law
Spring 2013/ Introduction to Criminal Justice
Fall 2014/ Introduction to Criminal Justice
Fall 2014 / Criminal Law
Spring 2015/ Introduction to Criminal Justice
Fall 2015/ Introduction to Criminal Justice
Spring 2016/ Introduction to Criminal Justice
Fall 2016/ Introduction to Criminal Justice
Spring 2017/ Introduction to Criminal Justice
Fall 2017/ Introduction to Criminal Justice
Fall 2018/ Introduction to Criminal Justice
Spring 2019/ Introduction to Criminal Justice

## IV.  **WORK EXPERIENCE**

A. Civilian Director, Somerset County Police Academy/ September 2002-March 31, 2023

B. Somerset County Police Academy,  Academy Director, rank of Major,(1989-1993) rank of Deputy Chief (1993-2002) January 1989 - September 2002

C. Bridgewater Township Police Department, Bridgewater, New Jersey Police Officer/Patrol Sergeant/ May 1978-January 1989

D. Bound Brook Police Department, Bound Brook, New Jersey Police Officer/ October 1976-May 1978

## V.    PROGRAM DEVELOPMENT PROJECTS/ACCOMPLISHMENTS

A.    Authored a booklet entitled "Personal Safety Program for the New Driver." This program was designed for high school students who are about to obtain their driver's license. The program addresses personal safety issues for the adolescent who will be operating a motor vehicle for the first time and needs to employ proactive safety measures.

B.    Designed and administered a Basic Detectives Course for newly assigned personnel to a Detective Bureau in 1990-91

C.    Developed and taught a "Personal Safety Program" attended by 3,000 women in 60 sessions from Somerset County. This was in response to an outcry from the community in reference to the abduction and murder of a housewife in 1993.

D.    Guest Host New Jersey News Network, 1993, "How to Train Police Officers in Use of Force."

E.    Developed the "Skills of Life" program which provides interaction of High School students with various members of the Law Enforcement community.

F.    Developed Juvenile Offender Leadership Training (JOLT), a court mandated weekend boot camp.

G    Developed an Advanced Methods of Instruction course for law enforcement trainers in the State of New Jersey.

H.    Developed a High-Speed Police Pursuit training program for use during in-service training by police departments in Somerset County as per Attorney General Guidelines.

I.    Conducted research relating to the psychological and physiological responses visited upon law enforcement officers as a result of using emergency lights and sirens during pursuit driving.

J.    Developed a Personal Safety Handbook for first year female college students who may be away from home for the first time in their life.

K.    In January of 1995 developed a "Pursuit Training Manual" for police departments in the County of Somerset. In conjunction with the material located in the manual, wrote and produced a video which relates to "High Speed Pursuit and the Law Enforcement Officer."

L    In 1997 designed and oversaw construction of the current Somerset County Firearms Range to include the development of a financial structure to facilitate the construction thereof.

M.   In January of 1997 developed a "Use of Force Manual" which was used by all Law Enforcement Agencies in Somerset County.  In conjunction with this manual, wrote, produced and directed a video which was the mandatory training video for all Somerset County Police Departments.  The video was viewed twice a year for several years by every officer in Somerset County as part of the Attorney General's mandatory Use of Force training directive.

N.   Doctoral Thesis is a training model which identifies the concepts and strategies that are required when administering a comprehensive Police Recruit Training Program.  The model is titled the "Challenge Program" whereby police recruits are challenged on a daily basis during the training program.  This "testing" process is used to identify both strengths and weaknesses of a particular trainee.  The mission of the program was to develop a well-rounded professional police officer who will not overreact or under react in the often-challenging environment of law enforcement.

O   Developed a guidebook from the doctoral thesis titled the "Challenge Program." The guidebook was provided for use by academies across the State of New Jersey.

P.   As Director of the Somerset County Police Academy, the academy was;

1. The first in the State of New Jersey to pilot and implement the "Alternate Route Program,"
2. The first in the State of New Jersey to certify trainees in the basic program in the use of the defibrillator,
3. The first in the Nation to certify police recruits though the United States Department of Justice as Community Police Officers,
4. The first in the State of New Jersey to certify the entire academy staff as community policing instructors and community policing officers,
5. The first in the state to have correction officer staff certified as Community Policing Officers,
6. The first in the state to pilot a combined County Corrections Officer and Police Officer Basic Training Course,
7. Selected for a documentary on training police recruits. Show aired repeatedly on Court TV. (July 9, 2002),
8. Selected to appear on the Today Show to discuss recruit training (Interview by TV personality Al Roker, July 9, 2002),

Training while an active-duty uniformed police officer:

1.  Basic Narcotics Investigation/ New Jersey State Police Academy NJ **[1977]**
2.  Advanced Narcotics Investigation/ New Jersey State Police Academy NJ **[1977]**
3.  Basic Sex Crimes Investigation/ New Jersey State Police Academy NJ **[1977]**
4.   Advanced Sex Crimes Investigation/ New Jersey State Police Academy NJ **[1977]**
5.  Officer Survival/ New Jersey State Police Academy NJ **[1978]**
6.  Advanced Officer Survival/ New Jersey State Police Academy NJ **[1978]**
7.  PR-24 Baton Training/ Bridgewater Township Police Department NJ **[1979]**
8.  Accident Investigation I/ New Jersey State Police Academy NJ **[1980]**
9.  Accident Investigation II/ New Jersey State Police Academy NJ **[1980]**
10. Radar Operators Course/ New Jersey State Police Academy NJ **[1980]**
11. Breathalyzer Operators Course/ New Jersey State Police Academy NJ **[1980]**
12. Hostage Negotiation/ New Jersey State Police Academy NJ **[1985]**
13. Hostage Negotiation/ NYPD Hostage School/ Held at RVCC NJ **[1985]**
14. Methods of Instruction/Somerset County Police Academy NJ **[1987]**
15. Physical Fitness Instructors Course/ Cooper Institute/Dallas Texas **[1987]**
15. Certified Community Policing instructor by New Jersey Regional Community Policing Institute **[June, 2001]**
16. Certified Community Policing officer by New Jersey Regional Community Policing Institute **[June, 2001]**
17. Nationally certified Use of Force instructor, National Criminal Justice Training Council **[May 2002]**
18. Selected to be the Lead Instructor nationwide to develop and administer training relative to Use of Force in a Community Policing Environment by the U.S. Department of Justice and New Jersey Regional Community Policing Institute **[April 2003]**. As of December 2003, Dr. Richard Celeste delivered instruction to trainers representing 30 states.
20. In **[2004]** Dr. Richard Celeste named to the American Association of Community Colleges, "Homeland Security and Public Safety Group."
21. In **[2004]** Dr. Richard Celeste named Project Coordinator Learning for a Federal Service-Learning Grant relative to Homeland Security.
22. In **[2004]** Dr. Richard Celeste edited the year one Mandatory Agency Training Series (MATS) program which addresses the New Jersey Attorney General's mandated training programs in Use of Force, Domestic Violence, and Pursuit.
23. In **[2005]** Dr. Richard Celeste edited the year two Mandatory Agency Training Series (MATS) program which addressed the New Jersey Attorney General's

mandated training programs in Use of Force, Domestic Violence, and Pursuit.

24. In **[2005-2022]**, Dr. Celeste authored and instructed the "Use of Force" MATS program which is the Attorney General's mandatory training requirement.

25. In **[2005-2022]**, Dr. Celeste edited and/or instructed the "Vehicular Pursuit" MATS program which is the Attorney General's mandatory training requirement.

26. In 2005 Dr. Celeste developed the Raritan Valley Community College Policing Institute to fill the certification gap created by the New Jersey Regional Community Policing Institute which became defunct in **[May 2005]**

27. Dr. Celeste was contracted to be a graduate school reader/editor for Thomas Edison State College **[April 2005]**

28. Lead instructor for all Use of Force Training conducted in basic training for police, corrections, county investigators and parole officers from **[1993-2013]**

29. Advisory Board Member – Raritan Valley Community College Criminal Justice Program, **[2002 – 2019]**

30. Advisory Board Member – Somerset Vo-tech Law Enforcement Program, **[2007]**

31. Advisory Board Member – Stockton University Center for Public Safety and Security.  **[Fall 2011]**

## VI.  PROFESSIONAL AFFILIATIONS

A.  Member/ American Society of Criminology, **[2015 to present]**

B.  Member/Society for Applied Research in Memory and Cognition **[2014 to 2022]**

C.  Member/Somerset County Chiefs Association, Education Committee **[Jan/1989-March 2023]**

D.  Member/New Jersey Police Academy Directors Association **[Jan/1989- Dec 2013]**

E.  Member/ Association of Force Investigators (AFI) **[January 2021 to present]**

F.  Member International Association of Chiefs of Police **[January 2023 to present]**

## VII.  HONORS AND AWARDS

A.  Prosecutor's Achievement Award **[1988]**

B.  Bridgewater Township Dedicated Service Award **[1989]**

C.  Prosecutor's Achievement Award **[1992]**

D.  Prosecutor's Achievement Award **[1996]**

E.  Somerset County Chiefs of Police Association Recognition Award **[1997]**

F.    Somerset Medical Center Recognition Award **[2000]**
G.    Somerset Medical Center Recognition Award **[2001]**
H.    Somerset Medical Center Recognition Award **[2002]**
I.    New Jersey Regional Community Policing Recognition Award **[2001]**
J.    Honorable Discharge Medal for Outstanding Service, Somerset County Prosecutor's Office **[December 2002]**
K.    Prosecutor's Achievement Medal for being recognized by Court Television for the production of a documentary concerning the Somerset County Police Academy **[December 2002]**
L.    State of New Jersey Senate and General Assembly Citation for 26 years of Outstanding Law Enforcement Service **[December 2002]**
M.    State of New Jersey Senate and General Assembly Citation for being recognized on National Television for the documentary on Court Television concerning the Somerset County Police Academy **[December 2002]**
N.    Honored by the Newark Office of the Federal Bureau of Investigation for Lifetime Achievement in the area of Law Enforcement Training **[February 2003]**
O.    Honored by the Somerset County Chiefs Association for Professionalism and Dedication to Duty as Director of the Academy **[February 2003]**
P.    Honored by Raritan Valley Community College recognizing leadership for the College's Service- Learning Program in achieving two national honors;
     1.    Service Learning and Civic Engagement Award **[2008]**
     2.    President's Higher Education Community Service Honor Roll Special Achievement Award **[2008]**
Q.    Honored by the New Jersey State Parole Board by form of State Resolution for providing state of the art training. Adopted in formal session **[November 26, 2008]**
R.    Honored by the International Association of Martial Arts, receiving a lifetime achievement award for the outstanding training of law enforcement officers **[November 19, 2011]**
S.    Honored by the Somerset County Office of the Sheriff. Civilian Sheriff's Recognition Award **[December 2016]**

VIII.   **MISCELLANEOUS**

1.   Represented New Jersey State Chiefs of Police Association on the topic of "Less Lethal Munitions" before New Jersey Attorney General Committee

on Less Lethal Policy development **[2007]**

2.  Attended the AELE Law Enforcement Legal Center Workshop on "Lethal and Less Lethal Force," San Francisco, CA. **[March 24-26, 2008]**

3.  In **[2008]**, testified before Attorney General Blue-Ribbon Committee as expert witness and consultant relative to the feasibility of Conducted Energy Devices and their use in the State of New Jersey.

4.  In **[2008]**, successfully completed 62-hour certificate program from Penn State University on the topic of Less Lethal weapons; considered to be the only program of its kind in the United States.

5.  Attended a special Federal Bureau of Investigation school relative to use of force and the "Color of Law." **[September 2008]**

6.  Attended the Institute for the Prevention of In-Custody Deaths, Inc. National Conference , Las Vegas, Nevada **[October 29-31, 2008]**

7.  Co-authored the "Less Lethal Certificate Program" curriculum for the State of New Jersey.

8.  Attended the AELE Law Enforcement Legal Center Workshop on "Discipline and Internal Investigations," (Internal Affairs) **[April 13-15, 2009]**

9.  Certified by AELE as a "Certified Litigation Specialist." The first individual in the Pennsylvania, New York, New Jersey area to hold that certification **[April 2009]**

10. Attended the Institute for the Prevention of In-Custody Deaths Instructor Course, Fairfax, Virginia, County Criminal Justice Academy, **[June 14-15, 2010]**

11. Co-authored the "Conducted Energy Device" curriculum for the State of New Jersey.

12. Attended the AELE law enforcement Legal Center Workshop on "Jail and Prisoner Security and Incident Liability," **[March 7-9, 2011]**

13. Certified as an Instructor, TASER ELECTRONIC CONTROL DEVICES, **[May 5, 2011]**, Instructor Identification Number 110531545931412871346C **(Expired 2019)**

14. Delivered instruction to the initial group of Conducted Energy Device Instructors for the State of New Jersey, **[December 1 and 2, 2011]**

15. Certified as a Use of Force Analyst by the Force Science Institute.  Dates of training **[April 16-20, 2012]**

16. Attended the Police Agency Training Council course regarding Conducted Energy Devices and Liability.  Hampton, New Hampshire **[October 1 and 2, 2012]**

17. Trained the initial group of New Jersey State Police outfitted with electronic control devices **[October 16, 2012]**

18. Attended the AELE Law Enforcement Legal Center Workshop on "Discipline and Internal Investigations," (Internal Affairs) **[December 10-12, 2012]**

19. Attended the "Five Phases of the Active Shooter "training seminar at Iona College on **[January 10, 2013]**

20. Re-certified as a TASER Instructor on **[February 26, 2013]**. Currently certified as a TASER Instructor for the following devices; X-26, X-2, AXON camera headset.

21. Attended the AELE Law Enforcement Legal Center Workshop on "Management, Oversight and Monitoring of Use of Force," **[April 2-4, 2013]**

22. Re- certified as a "Certified Litigation Specialist" in the area of Police Litigation by the American for Effective Law Enforcement **[April 22, 2013]**

23. Designed three separate active shooter presentations for Somerset County Employees **[2013 to 2020]**

24. Delivered over 150 sessions regarding "Active Shooter Awareness" in the State of New Jersey **[2013 to 2020]**

25. Provided instruction regarding Conducted Energy Devices and Less Lethal for new instructors throughout New Jersey, **[November 18, 2014]**

26. Attended New Jersey Internal Affairs Training, Somerset County Prosecutor's Office. **[December 16 and 17, 2014]**

27. Attended Public Agency Training Council 5-day Internal Affairs Certification Course, Rutgers University, **[May 18-22, 2015]**

28. IPICD Webinar/ "One Breath: The Importance of Recognizing Agonal and Other Breathing Problems." Dr. John Peters **[October 11, 2015]**

29. Attended the IPICD 10th Annual Excited Delirium, Agitated Chaotic Events, Arrest-Related and In-Custody Deaths Conference, Las Vegas, Nevada, **[November 16-18, 2015]**

30. Delivered Use of Force Instruction to Somerset County Clergy and Public Officials Conference, **[December 1, 2015]**

31. Delivered Use of Force Instruction to Hunterdon County Clergy and Public Officials Conference, **[December 15, 2015]**

32. Guest lecturer/ New Jersey Internal Affairs Training. Somerset County Prosecutor's Office **[December 2015]**

33. Active Shooter presentation for the Somerset County Governing Officials Association **[July 14, 2016]**

34. Guest Lecturer/New Jersey Internal Affairs Training, Somerset County Prosecutor's Office **[August, 2016]**

35. Re-certified as a TASER Instructor on December, 2016. Certified as a TASER Instructor for the following devices; X-26, X-2, AXON camera headset. **[expired 2019]**

36. Attended the AELE Law Enforcement Legal Center Workshop on "Lethal and Less Lethal Force," **[April 3-6, 2017]**

37. Guest Lecturer New Jersey Jail Wardens Annual Conference, Atlantic City, NJ regarding Use of Force and Excited Delirium **[October 3, 2017]**

38. Delivered Use of Force training as part of the New Jersey Attorney General's Mandatory "Special Needs" program during the **[Fall of 2017]**

39. Designed and delivered 16 sessions of a 3-hour program regarding hands-on self-defense training for Somerset County employees in positions dealing with clientele who may be prone to acting out in a physical manner **[May 2018- August 2018]**

40. Guest Panelist on "Fox and Friends" for Law Enforcement Appreciation Day, **[January, 2019, 2020]**

41. Designed and Delivered "De-escalation Training" to 1500 Somerset County employees, **[February 2019-November 2019]**

42. Attended the Daigle Law Group Use of Force Summit, **[December 2-4, 2019]**

43. AELE Webinar/ "Metallic Handcuffs" Dr. John Peters **[April 23, 2020]**

44. AELE Webinar/ "Distraction Devices" David Berman **[June 6, 2020]**

45. AELE Webinar/ "Use of Force Accountability" Michael Brave **[June 6, 2020]**

46. Daigle Law Group Webinar/ "De-Escalation- What Does This Mean: Use of Force Legal Standards and Tactics **[June 25, 2020]**

47. Delivered Use of Force training at Somerset/Hunterdon/Warren "Town Hall" at the request of respective Prosecutors in those counties **[July 28, 2020]**

48. Attended Attorney General's Mandatory Use of Force Training regarding Instructor re-certification for Conducted Energy Devices **[October 26, 2020]**

49. Developed the "Principles of Policing" Program for agencies in the Academy's service area. The program addresses policing topics in a 10-15-minute format for use during roll-call training and shift overlap **[11/2020]**

50. Guest Lecturer in the Somerset County Internal Affairs Investigators Course/Civil Liability regarding Internal Affair Investigations **[11/2020]**

51. International Association of Directors of Training on-demand webinar/ Police Pursuit Training **[November 30, 2020]**

52. Crisis Intervention Team Course Overview/ Washington State Criminal Justice Training Commission **[December 2, 2020]**

53. CLE presentation for NJ lawyers providing an overview of the Principles of Policing Program and an analysis of the George Floyd case **[December 2020]**

54. Attended New Jersey Internal Affairs Training [New Policy], **[January 28, 29, and February 4, 2021]**. Hosted by the Hunterdon, Warren, and Sussex County Prosecutor's Office.

55. Guest Presenter at the Somerset County Clergy Group. Topic: A Conversation on Racial Justice and Policing **[February 4, 2021]**

56. IPICD Webinar/ "Recognizing and Managing Abnormal Breathing 2.0," Certificate Program. Dr. John Peters **[February 17, 2021]**

57. Association of Force Investigators Webinar. Topic: The Psychology of Deadly Force Encounters presented by Dr. Alexis Artwohl **[February 23, 2021]**

58. Guest Presenter, Hunterdon/Somerset/Warren County Prosecutor's Town Hall Session regarding Use of Force. **[April 28, 2021]**

59. Certified "Active Bystandership in Law Enforcement" (ABLE) Instructor on **[June 21, 2021]** by University of Georgetown Law Center.

60. Certified "Integrating Communications, Assessment, and Tactics" (ICAT) Instructor on **July 15, 2021** by Police Executive Research Forum (PERF)

61. Appointed Coordinator of ABLE/ICAT training initiative in Somerset County, New Jersey **[June 2021]**.

62. Coordinated and Instructed ABLE/ICAT program to every law enforcement officer in Somerset County, New Jersey in over 30 programs. **[2021-2022]**

63. Developed five narrated Power Point presentations on the current New Jersey Attorney General's Use of Force Policy which was disseminated to several counties in New Jersey **[1/26/22]**

64. Developed and narrated Power Point presentation on the current New Jersey Attorney General's Vehicular Pursuit Policy which was disseminated to several counties in New Jersey **[1/26/22]**

65. Received Training from the New Jersey Attorney General's Office regarding the new Conducted Energy Device and Less Lethal Munitions policy **[1/27/2022]**

66. "Unconscious Bias Training," County of Somerset Government, presented by Kimberly Cowart **[5/2/2022]**

67. "Implicit Bias Training," NACOLE, by Dr. Lori Fridell **[5/23/2022]**

68. "Use of Force Continuum training," Daigle Law Group, presented by Eric Daigle **[5/25/2022]**

69. "Investigating Human Error," Association of Force Investigators, presented by Dr. Paul Taylor **[5/31/2022]**

70. "The Importance of Skill Transfer in Law Enforcement," Association of Force Investigators, presented by Mike Musengo **[6/3/2022]**

71. Fairness in Policing Coordinator in Somerset County **[8/2022]**

72. Developed three narrated Power Point presentations on the current New Jersey Attorney General's Use of Force Policy which was disseminated to several counties in New Jersey **[9/1/22]**

73. Fairness in Policing Instructor Certified/ **[10/20/2022]**

74. Coordinated and Instructed Fairness in Policing program to every law enforcement officer in Somerset County, New Jersey in over 30 programs. **[Fall 2022]**

75. Presenter at Somerset County Superintendents Forum on Active Shooter **[10/28/22]**

76. Attended the Daigle Law Group Use of Force Summit, **[November 29-December 1, 2022]**

77. Internal Affairs Instructor Certification/ Somerset County Police Academy **[February 2023]**

78. NJ Use of Force Presentation/ Bridgewater Citizens Academy/**[May 2023]**

79. Threat Management Presentation/ Immaculate Conception School Staff **[August 2023]**

80. Threat Management Presentation/ Doric Condo Association, Union City, NJ **[February 2024]**

81. Science of Violence: Introduction to Biomechanics. **[March 4 and 5, 2024]**

82. Science and Experience of Prone Restraint Risk Mitigation: GTD Scientific. **[October 29, 2025]**

83. Click on Investigating Duty to Intervene with Danny King. Henderson Neveda Police Department (ret.) Association of Force Investigators platform. **[March 4, 2026]**


## IX.    EXPERT WITNESS WORK

Concerning experience in the area of use of force, Dr. Celeste has instructed all basic and advanced instruction on this topic at the police academy.  Student officers that have received this training include; police, parole, corrections, county detectives, firearms instructors, active shooter course attendees, Forensic Program attendees and SWAT team members.

Dr. Celeste was qualified as an expert in Warren County Superior Court in March of 2006 in the area of Use of Force, Police Training and Police Procedures. He was qualified in the area of Criminal Justice in Middlesex County in 2009. He was further qualified in Police Pursuits in Essex County Superior Court in April 2016. He has testified in Federal and Superior Court (Civil and Criminal), been deposed, written expert reports and consulted on a number and in a variety of cases.

Dr. Celeste has authored over 200 expert reports and has handled use of force cases ranging from minor uses of force up to over 40 officer involved shootings and in-custody deaths. The experience and knowledge gained from these cases were passed on to student-officers in an effort to provide them with the importance of current day standards in an effort to facilitate the development of professional law enforcement officers.

MARCH 2026